THOMAS J. DE CARO, MARY FERRANTE, AND JEAN WARGACKI, PLAINTIFFS-RESPONDENTS, v. FRANK DE CARO, ALSO KNOWN AS FORTUNATO DE CARO, DEFENDANT-APPELLANT.

Argued May 11, 1953—Decided June 1, 1953 .

Mr. *Julius E. Kramer* argued the cause for the defendant-appellant (Messrs. *Chandless, Weller & Kramer*, attorneys; Mr. *Ralph W. Chandless*, of counsel).

Mr. *Samuel A. Larner* argued the cause for the plaintiffs-respondents (Mr. *Morris Pashman*, attorney).

The opinion of the court was delivered by

JACOBS, J.   The defendant appeals, pursuant to certification granted by this court (11 *N. J.* 332 (1953)), from the

Appellate Division's reversal of the trial court's judgment denying specific performance of a settlement agreement between the parties. See *De Caro v. De Caro*, 22 *N. J. Super.* 463 (1952).

Anna De Caro died on April 18, 1950 and was survived by her three children Thomas, Mary and Jean and her husband Frank. She had been employed during many years of her married life and at her death was living apart from her husband. On February 28, 1944 she had executed a last will and testament naming her husband as sole beneficiary and executor. On the second day following her death her children filed a *caveat* against the probate of the will. They were represented by Mr. Pashman, an attorney-at-law. The husband was represented by Mr. La Rosa, an attorney-at-law who had drawn and witnessed the execution of the decedent's will. Thereafter extended negotiations were had for settlement of the dispute between the children on the one hand and the husband on the other. The estate included nine accounts totaling approximately $5,400 in banks and savings and loan associations. Five of these totaling approximately $2,900 were in the name of the decedent and one or another of her children. The children claimed absolute ownership of these accounts. In addition, they apparently made claim that an account of the decedent in the Rutherford Trust Company rightly belonged to Thomas and that an account of the decedent in the Peoples Trust Company was a transferred account, formerly in the name of the decedent in trust for Jean, and was the property of Jean. These accounts totaled over $1,300. The assets of the estate, excluding the nine accounts, were insubstantial; indeed, the entire estate including the accounts was $5,911.31 and the funeral bill was $1,130.25.

On May 8, 1950 Mr. Pashman submitted a proposed settlement agreement but it was rejected and after further negotiation Mr. La Rosa prepared a proposed agreement. This likewise was not executed and on May 23, 1950 both attorneys and their clients met at Mr. La Rosa's office. After a conference which lasted the better part of the day there was a

mutual accord which was embodied in a formal written agreement dated May 23, 1950 and bearing the signatures of the children and the husband as parties and the attorneys as witnesses. Under the agreement the seven accounts claimed by the children went to them and they agreed to withdraw the *caveat* which they had filed against the probate of the will. Following the execution of the agreement the children signed a withdrawal of their *caveat* and delivered it to Mr. Pashman who in turn sent it to Mr. La Rosa. In the meantime the husband had apparently become dissatisfied with his agreement and had consulted others; nevertheless he and his attorney Mr. La Rosa went to the office of the Bergen County Surrogate on June 20, 1950, filed the withdrawal of the *caveat*, and probated the will. Thereafter the husband declined to perform in accordance with the agreement despite appropriate demands.

On April 2, 1951 the children as plaintiffs filed their action in the Chancery Division against the husband as defendant seeking specific performance of the agreement of May 23, 1950. After trial the court declined to grant the relief sought on the ground that its consideration was "neither fair, reasonable nor just." In reaching this conclusion it expressed the opinion that if the plaintiffs had actually set aside the will the defendant would have received about $1,600, whereas under the settlement he was left with less than $600. The main infirmity with this calculation would seem to be that it included as part of the decedent's general estate the accounts claimed by the children. If the five accounts which bore their names were excluded then the defendant's interest on intestacy would be slightly over $600; if all seven accounts claimed by them were excluded it would be under $200. In reversing the trial court's judgment the Appellate Division found that the alleged inadequacy of the consideration did not constitute any valid basis for not enforcing the agreement in accordance with its terms. Before this court the defendant-appellant urges various grounds of error which will be considered *seriatim*.

## I.

The appellant's first contention is that the Appellate Division improperly considered the matter without having presented to it by the plaintiffs an appendix embodying the entire record of the trial in the Chancery Division. We assume that in preparing their appendix in the Appellate Division the plaintiffs included such parts of the record as they in good faith deemed essential to the proper consideration of the issues and which they desired the court to read. See *Rule* 1:3–2(*f*). If the defendant desired that the court read additional parts of the record he was at liberty to embody them in his filed appendix, and we understand that he actually did so. See *Rule* 1:3–3(*f*). Thus, in full conformity with the rules, the Appellate Division was furnished with the essential materials for a just determination of the cause without the unnecessary burden and expense of the printing and examination of the entire trial record. The defendant's reference to *State v. Marchione*, 5 *N. J.* 340 (1950) is inapt. There the appellant failed to submit an appendix and filed an inadequate brief. The court, on its own motion, struck the cause from the argument list and directed the appellant to file an appendix and a new brief.

## II.

The appellant next contends that the Appellate Division improperly declined to consider the charge that the agreement was the result of fraud or mutual mistake. This charge was not embodied in the answer or in the pretrial order. However, at the trial the court said, "I will allow you to prove fraud or mistake if you can prove it. The pretrial order will be amended accordingly." The trial court undoubtedly had power to amend the pretrial order during the trial (*Rule* 3:16–42; *Binder v. Green*, 8 *N. J. Super.* 88, 93 (*App. Div.* 1950)), although it would have been better practice to have then required a specification of the particulars of the fraud or mistake. See *Rule* 3:9–1. In any event, we have examined the record and find, as did the Appellate

Division, that fraud or mutual mistake was not proved. The burden of establishing his charge by clear and convincing evidence rested upon the defendant. *Asbestos Fibres, Inc. v. Martin Laboratories, Inc.*, 12 *N. J.* 233 (1953). He at all times had the advice of his own independent counsel who testifed that he explained fully every item in the agreement and that his client understood what the agreement contained. There is no evidence whatever supporting the suggestion of fraud and although there may have been some confusion as to whether the accounts of the decedent in the Rutherford Trust Company and the Peoples Trust Company also bore the names of any of her children, there is little doubt that prior to the execution of the agreement of May 23, 1950 they were actually claimed as the property of Thomas and Jean. There was no undue haste, pressure or unseemly conduct on the part of the plaintiffs (*Heuter v. Coastal Air Lines, Inc.*, 12 *N. J. Super.* 490, 496 (*App. Div.* 1951)) and the defendant and his counsel had ample opportunity to consider, verify and determine before they affixed their signatures to the settlement agreement.

## III.

The appellant contends that there was no *bona fide* dispute between the parties, that the agreement lacked consideration, and that it constituted a settlement of litigation requiring prior judicial sanction. There is not a shred of evidence in the record to support the contention that the dispute was not *bona fide*. Through their attorney the plaintiffs filed their *caveat* against the probate of the will, made specific claim to the accounts which they considered to be their own property, and participated in the negotiations for disposition of the entire dispute. The ultimate settlement agreement contained mutual undertakings including the provision that the plaintiffs would withdraw their *caveat* forthwith. They signed a formal withdrawal of their *caveat* and, though the defendant had already expressed dissatisfaction with the terms of the settlement agreement, he accepted and

filed the withdrawal thus eliminating the plaintiffs' opportunity for attack on the will prior to probate. Under the circumstances it seems entirely clear that the settlement agreement was supported by adequate consideration without regard to whether the withdrawn attack on the will actually possessed or lacked merit. *Worcester Loom Company v. Heald*, 78 *N. J. L.* 172, 175 (*Sup. Ct.* 1909); *Grandin v. Grandin*, 49 *N. J. L.* 508, 514 (*Sup. Ct.* 1887); *Rue v. Meirs*, 43 *N. J. Eq.* 377, 380 (*Ch.* 1887). All of the interested parties were competent adults and there was no legal requirement that they obtain formal court approval before executing their settlement agreement and withdrawing the *caveat*. The case of *Savage v. Edgar*, 86 *N. J. Eq.* 205, 208 (*E. & A.* 1916), cited by the defendant to the contrary, does not support his position. There Edgar sued Savage in the former Supreme Court and while the action was pending the parties entered into a settlement agreement which Savage fulfilled but Edgar sought to repudiate. Savage thereafter filed a bill in Chancery to restrain the action in the Supreme Court. The Court of Errors and Appeals held that Chancery should not intervene since Savage could properly assert his settlement agreement as a defense in the Supreme Court action. In the course of its opinion it properly noted, as quoted by the defendant, that since the settlement had been made privately it was "not entitled to judicial recognition until brought properly before the court in which the action was pending." The court's comment was entirely accurate in the situation before it but has no bearing under the facts presented in the instant matter. Courts have had frequent occasion to caution that judicial language, as all other language, must be read in context. See *Salomon v. City of Jersey City*, 12 *N. J.* 379 (1953).

## IV.

Finally, the defendant advances the contention that the settlement agreement was unfair and should not have been specifically enforced. The agreement forestalled im-

pending litigation and a family dispute, a goal which is considered with high favor by the courts. *Bell v. White,* 76 *N. J. Eq.* 49, 51 (*Ch.* 1909); 38 *A. L. R.* 734 (1925); 81 *A. L. R.* 1187. It was not accompanied by any artifice or deception, lack of independent advice, abuse of confidential relation, or similar indicia generally found in the reported instances where equity has declined to enforce, as unfair or unconscionable, an agreement voluntarily executed by the parties. See *Crane v. De Camp,* 21 *N. J. Eq.* 414, 418 (*E. & A.* 1869); 5 *Corbin, Contracts,* § 1165 (1951). Inadequacy of consideration standing alone has often been said to be insufficient to avoid specific performance of an otherwise valid agreement. See *Trenton Street Ry. Co. v. Lawlor,* 74 *N. J. Eq.* 828, 832 (*E. & A.* 1908), where Justice Trenchard flatly stated that the "court will not inquire into the adequacy or inadequacy of the consideration of a compromise fairly and deliberately made." See also *Grandin v. Grandin, supra; Phillips v. Pullen,* 45 *N. J. Eq.* 5, 7 (*Ch.* 1889), affirmed 45 *N. J. Eq.* 830, 836 (*E. & A.* 1889); *Elmora Development Co. v. Horwitz,* 2 *N. J. Misc.* 694, 699 (*Ch.* 1924), affirmed 98 *N. J. Eq.* 690 (*E. & A.* 1925); *Chubb v. Peckham,* 13 *N. J. Eq.* 207, 210 (*Ch.* 1860). Nevertheless there are decisions in our State and elsewhere which support the doctrine that if the inadequacy of the consideration is so gross as to shock its conscience, the court will decline to enforce the agreement "upon the ground that such inadequacy amounts to conclusive evidence of fraud." *Phillips v. Pullen, supra,* at 8; *Panco v. Rogers,* 19 *N. J. Super.* 12, 19 (*Ch. Div.* 1952); 5 *Williston, Contracts* (*Rev. ed.* 1937), § 1428. We may accept this doctrine without necessarily approving its stated ground. Where fraud is wholly absent, it seems anachronistic to rest judicial action on its supposed presence. However, as Professor Williston has pointed out, the denial of specific performance where the inadequacy of the consideration is shocking, may readily be rested upon the numerous cases in equity "which assert that the remedy is discretionary, and that harsh or unfair contracts will not be enforced." *Williston, supra,* § 1428, at

4000. See *Restatement, Contracts,* § 367 (1932) and *N. J. Annot.* § 367 (1936).

In the instant matter we do not find shocking inadequacy of consideration justifying refusal to enforce the agreement. Under the settlement the defendant, in primary effect, honored the plaintiffs' claim to the seven accounts as their own property and thereby avoided extensive and costly litigation with respect to the accounts and the will which named him as sole beneficiary. If the plaintiffs' claim was in fact valid, then the defendant has not been dealt with unfairly under any point of view. Their claim had some foundation, was apparently made in entire good faith, and we are not now at liberty to suggest that they would not have been able to establish it in a legal proceeding if called upon to do so. The defendant did not so call upon them but, after deliberation and upon the advice of his own counsel, chose to honor their claim in consideration of their undertakings under the agreement. In view of the circumstances we may not justly invoke the extraordinary power of declining to enforce the fairly executed settlement agreement of the parties solely because the material benefits afforded to the defendant presently appear to be rather meagre.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.