685 A.2d 73

STATE OF NEW JERSEY, COMPLAINANT–RESPONDENT,
v. EVELYN SMITH, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Law Division Criminal Part
Hudson County

Decided July 25, 1996.

400

*Gina A. Calogero*, for defendant-appellant.

*Thomas J. Ryan*, Assistant Prosecutor, for the State, complainant-respondent (*Carmen Messano*, Hudson County Prosecutor, attorney).

JOSE L. FUENTES, Judge.

This case presents an issue of first impression to the New Jersey judiciary: namely, the interpretation of *N.J.S.A.* 4:19–17 through 4:19–36 (the Vicious and Potentially Dangerous Dog Act), which governs vicious and potentially dangerous dogs. Specifically, appellant, Ms. Evelyn Smith, has appealed the ruling of the Hoboken Municipal Court finding her pet dog, Big Head, to be vicious under *N.J.S.A.* 4:19–22. If the appeal is unsuccessful, the dog would have to be destroyed. *N.J.S.A.* 4:19–20.

This court finds that the City of Hoboken failed to comply with the procedural requirements of the statute. Consequently, the municipal court lacked the subject matter jurisdiction to entertain this action and to pass judgment under the Vicious and Potentially Dangerous Dog Act. This court further finds that the parties voluntarily entered into an agreement constituting a settlement of the issues raised by this appeal. Therefore, the judgment of the Municipal Court of Hoboken is reversed, and any action ordered pursuant thereto is rendered null and void. This court finds the settlement to be a legally binding agreement between the parties and orders its specific enforcement.

## I. PROCEDURAL HISTORY AND FINDINGS OF FACT

On April 26, 1995, Ms. Smith took her dog, Big Head, an adult mixed-breed[1], for a walk in a fenced-in vacant lot fronting Jefferson Street in Hoboken. The dog was not leashed or otherwise restrained, as Ms. Smith believed that the lot was completely and securely sealed from the street and sidewalk outside. Unfortunately, this was not the case; the dog found an opening in the fence, rushed onto the sidewalk, and bit Mrs. Dorothy Petruzelli on the left hand. The victim, who had not in any way provoked the dog or threatened Ms. Smith, suffered serious injury to her hand and was rushed to St. Mary's Hospital in Hoboken for emergency treatment. She also received lacerations to her face which required stitches. Mrs. Petruzelli underwent two subsequent surgeries on her left hand at Columbia Presbyterian Hospital in New York City and has endured extensive rehabilitation. Despite these efforts, she has experienced a significant loss of use of her left hand.

The Hoboken Board of Health was notified of this dog bite incident by St. Mary's Hospital on April 27, 1995. That same day, Mr. Frank Sasso, Hoboken's Health Officer, had delivered to Ms. Smith a letter ordering her to appear at a hearing scheduled for May 8 pursuant to Hoboken City Code § 93–24. The hearing was held as scheduled, and a summons was issued charging Ms. Smith with a violation of *N.J.S.A.* 4:19–20. Hearings were then held in Hoboken Municipal Court on the following dates: June 22, July 11, July 19, August 8, and August 10, 1995. At some point in June 1995, appellant agreed to place the dog in a private kennel pending the decision of the municipal court. The municipal court issued its decision on August 10, finding the dog to be vicious under the terms of the Act, and notice of appeal was filed on August 18, 1995. On March 11, 1996, appellant filed a motion

---

[1] The court, in a *de novo* review, has examined photographs in evidence depicting the animal. Although the dog is classified as a mixed breed, he apparently is predominantly boxer and, in fact, resembles a boxer.

seeking a modification of the municipal court's order requiring that the dog remain in a kennel pending the outcome of this appeal. The motion was denied on March 20, 1996.[2]

## II.  LEGAL ANALYSIS

A thorough textual analysis of the Act compels the court to reverse the municipal court's ruling in this case; for while the court purported to act consonant with the dictates of *N.J.S.A.* 4:19–20 and 4:19–22, in reality the actions of both the City of Hoboken and the municipal court created a crazy quilt of missteps and omissions which in no way satisfied the requirements of the statute.

### A.  Subject Matter Jurisdiction

According to *N.J.S.A.* 4:19–19, an action pursuant to the Vicious and Potentially Dangerous Dog Act begins when an "animal control officer ... seize[s] and impound[s] a dog" based on reasonable cause to believe that the dog is vicious or potentially dangerous under any one of four enumerated factors.[3]  In this case, the pertinent factors would have been subsection (a) of *N.J.S.A.* 4:19–19, "[reasonable cause to believe that the dog] attacked a person and caused death or serious bodily injury ... to that person," and/or subsection (b), "[reasonable cause to believe that the dog] caused bodily injury ... to a person during an unprovoked attack and poses a serious threat of harm to persons

---

[2] The court's letter opinion denying appellant's motion is incorporated by reference and made a part of this opinion.

[3] Although the issue has not been raised by appellant, the prejudgment seizure of the dog at least implicates due process concerns.  *See Fuentes v. Shevin*, 407 *U.S.* 67, 92 *S.Ct.* 1983, 32 *L.Ed.2d* 556 (1972) (Florida and Pennsylvania prejudgment replevin statutes effected the deprivation of property without due process of law); *see generally Zinermon v. Burch*, 494 *U.S.* 113, 110 *S.Ct.* 975, 108 *L.Ed.2d* 100 (1990); *Hudson v. Palmer*, 468 *U.S.* 517, 104 *S.Ct.* 3194, 82 *L.Ed.2d* 393 (1984); *Callen v. Sherman's, Inc.*, 92 *N.J.* 114, 455 *A.2d* 1102 (1983); *Rivkin v. Dover Township Rent Leveling*, 277 *N.J.Super.* 559, 649 *A.2d* 1356 (App.Div.1994), *cert. granted*, 140 *N.J.* 275, 658 *A.2d* 299 (1995).

or domestic animals." *N.J.S.A.* 4:19–19. Further, "[t]he dog shall be impounded until the final disposition as to whether the dog is vicious or potentially dangerous." *Id.*

Once the dog in question has been impounded, the animal control officer must immediately notify the municipal court of this action and attempt to identify the dog's owner. *N.J.S.A.* 4:19–20. Within three working days of ascertaining the owner's identity, the animal control officer shall notify the dog's owner of the impoundment and shall inform the owner of his right to request a hearing. The notice from the animal control officer to the dog owner "shall also require that the owner return within seven days, by certified mail or hand delivery, a signed statement indicating whether he wishes the hearing to be conducted or, if not, to relinquish ownership of the dog, in which case the dog may be humanely destroyed." *N.J.S.A.* 4:19–20. If a hearing is requested, the municipality has the burden of proving, by clear and convincing evidence, that the dog is vicious or potentially dangerous. A dog is deemed vicious if (in pertinent part) it: "(1) killed a person or caused serious bodily injury as defined in *N.J.S.* 2C:11–1(b) to a person." *N.J.S.A.* 4:19–22(a). However, a dog shall not be declared vicious for causing death or serious injury to a person if the dog was provoked. *N.J.S.A.* 4:19–22(b). A dog shall be found to be potentially dangerous if (in pertinent part) it: "(1) caused bodily injury as defined in *N.J.S.* 2C:11–1(a) to a person during an unprovoked attack, and poses a serious threat of bodily injury or death to a person . . . ." *N.J.S.A.* 4:19–23(a)(1).

▇▇▇ The City of Hoboken failed to follow this procedural roadmap. The proceeding concerning Big Head was initiated by Mr. Sasso, the Health Officer, instead of by the animal control officer as specified in *N.J.S.A.* 4:19–19.[4] Further, Hoboken did not commence proceedings by impounding the dog, as *N.J.S.A.*

---

[4] While Hoboken does not maintain its own full-time animal control officer, it does contract with Jersey City for the use of its animal control officer and thus could have complied with the requirements of the statute.

4:19–19 directs, but rather held a "preliminary" hearing before deciding to issue a summons for violating the Vicious and Potentially Dangerous Dog Act. Despite there being no provision for such hearings under the statute, Mr. Sasso contends that he acted pursuant to the powers afforded him by Hoboken City Code § 93–24. That ordinance reads:

The Health Officer is hereby empowered to order a hearing for the purpose of ensuring that all aspects of this chapter are being met. [He] shall give written notice stating the time, location and a brief statement of reason for the hearing. . . .

[Hoboken, N.J. City Code § 93–24 (1994).]

However, the Act specifically provides for the preemption of "any law, ordinance, or regulation concerning vicious or potentially dangerous dogs, any specific breed of dog, or any other type of dog inconsistent with this act enacted by any municipality, county, or county or local board of health." *N.J.S.A.* 4:19–36. While it is true that a state statute does not preempt a municipal ordinance simply by addressing the same subject, *Parsippany Hills Assoc. v. Rent Leveling Bd. of Parsippany–Troy Hills Township*, 194 *N.J.Super.* 34, 49, 476 *A.*2d 271 (App.Div.1984), the ordinance will be preempted if the court finds that the Legislature intended the statute to be "the sole regulator of an area." *State v. Crawley*, 90 *N.J.* 241, 250, 447 *A.*2d 565 (1982). Toward that end, the New Jersey Supreme Court has applied a multi-part test to inform its preemption analysis:

1. Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the Legislature has permitted?

2. Was the state law intended expressly or impliedly to be exclusive in the field?

3. Does the subject matter reflect a need for uniformity?

4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?

5. Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature?

[*Overlook Terrace Management Corp. v. West New York Rent Control Bd.*, 71 *N.J.* 451, 460–62, 366 *A.*2d 321 (1976).]

Applying the *Overlook* test, this court finds that the Vicious and Potentially Dangerous Dog Act preempts any Hoboken ordinance purporting to cover this same subject. At a minimum, the plain

language of *N.J.S.A.* 4:19–36 declares the State's intention that the statute constitute the exclusive law in this area. Perhaps more importantly, however, is the danger that the procedural features of a municipal ordinance would conflict with the dictates of the statute—as they did in this case—thus inevitably leading to confusion among the parties and the inefficient enforcement of the Act. A servant can serve but one master; in this case, that master is the Legislature.

■ As the statute makes no provision for initiating an action by any means other than impoundment of the dog, it is clear that Hoboken did not proceed in accordance with the Act. Neither did the municipal court require the City of Hoboken to comply strictly with the statute's procedural demands. The court had ample opportunity to address this issue, by refusing to entertain proceedings on this matter until an action was initiated properly under *N.J.S.A.* 4:19–19. The court also should have found that the Vicious and Potentially Dangerous Dog Act preempted any Hoboken ordinance which dealt with this subject.

By failing to take any action to cure these jurisdictional deficiencies, the municipal court deprived itself of the legal authority to hear this case and make any rulings therein. This court therefore holds that the municipal court did not have the subject matter jurisdiction to hear this case.

## B. The Issue of Settlement

■ Appellant has argued that the issues raised by this appeal were resolved by way of an agreement voluntarily entered into by the parties. She maintains that this settlement was improperly rejected by the municipal court and therefore should be specifically enforced by this court. *N.J.S.A.* 4:19–21.1 specifically provides for the settlement and disposition of this type of case by private agreement between the parties.

> Notwithstanding any provision in [the Act] to the contrary, the municipality and the owner of the dog may settle and dispose of the matter at any time in such

manner and according to such terms and conditions as may be mutually agreed upon. . . .

As of June 22, 1995, both sides were willing to reach a settlement, which materially provided:

a) that the dog be relocated to another town;

b) that the dog enter a behavior re-training program;

c) that appellant agree to the designation of the dog as "potentially dangerous" under the statute; [5]

d) that pending relocation, the dog would not be walked on the streets of Hoboken.

Despite this apparent concordance, the municipal court judge conducted a "public hearing" to solicit public opinion regarding the settlement and arrogated to himself the authority to scuttle it on the ground that it insufficiently protected the public interest.[6]

This flies in the face of the standing policy in New Jersey courts in favor of settlements, *Pascarella v. Bruck*, 190 *N.J.Super.* 118, 124–25, 462 *A.*2d 186 (App.Div.1983); *Davidson v. Davidson*, 194 *N.J.Super.* 547, 550, 477 *A.*2d 423 (Ch.Div.1984), at least in the civil arena, in which this statute most appropriately belongs.[7] According to the *Pascarella* court,

An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of "fraud or other compelling circumstances," should honor and enforce as it does other contracts. (citing *Honeywell v. Bubb*, 130 *N.J.Super.* 130, 136 [325 *A.*2d 832] (App.Div.1974)). Moreover, courts will not ordinarily inquire into the adequacy or inadequacy of the

---

[5] The designation of the dog as "potentially dangerous" would trigger compliance with the provisions of *N.J.S.A.* 4:19–24.

[6] The municipal court judge, in vetoing the proposed settlement, stated, "I think it was a reasonable, rational decision … but it was subject to the public being heard. My feeling, after having heard from a number of people, is that it's just not sufficient." Transcript of the June 22, 1995 Hearing at 47, *State v. Evelyn Smith*, Municipal Appeal No. 55–95.

[7] The statute adopts the "clear and convincing evidence" standard as the threshold for finding a dog vicious under *N.J.S.A.* 4:19–22 or potentially dangerous under *N.J.S.A.* 4:19–23. *N.J.S.A.* 4:19–22, 4:19–23. Unlike other state regulatory-type statutes, which require proof beyond a reasonable doubt in order to adjudge guilt, the Vicious and Dangerous Dog Act can not be characterized as "quasi-criminal." *See State v. Laird*, 25 *N.J.* 298, 302–03, 135 *A.*2d 859 (1957).

consideration underlying a compromise settlement fairly and deliberately made. (citing *DeCaro v. DeCaro*, 13 *N.J.* 36, 44 [97 *A*.2d 658] (1953)).

[*Pascarella*, 190 *N.J.Super.* at 124–25, 462 *A*.2d 186.]

The record does not reveal upon what authority the parties were brought before the municipal court on June 22, but New Jersey courts generally have not subjected to court approval civil settlements between competent parties. *Pascarella* at 124, 462 *A*.2d 186 (citing *DeCaro*, 13 *N.J.* at 43, 97 *A*.2d 658). Further, "the practice of spreading the terms of the agreement upon the record, although a familiar practice, is not a procedure requisite to enforcement" of a settlement. *Pascarella* 190 *N.J.Super.* at 124, 462 *A*.2d 186. Thus, the municipal court had no authority to convene a public hearing to address the terms of the proposed settlement,[8] nor did it have the right to veto the settlement itself.

The court finds that the settlement reached by the parties on June 22, 1995, clearly meets all the requirements for enforcement stated in *Pascarella, supra.* The agreement was and is a legally binding and enforceable settlement of the issues raised by this case. This method of dispute resolution is specifically authorized by the Legislature as a means of settling the often emotionally charged issues involved in these types of cases.

By this ruling, the court in no way seeks to denigrate or downplay the brutality of this incident or the suffering endured by the victim, Mrs. Petruzelli. The dog, Big Head, viciously attacked her without provocation. However, a court's authority is derived from the rule of law. The Legislature of the State of New Jersey, as the elected representatives of the people, adopted this statute with clear and demanding procedural requirements designed to protect the rights of all affected by this law. This court is duty-

---

[8] The municipal court, via this unauthorized hearing which at times seemed in equal parts Roman circus and show trial, did a disservice to all involved. Both the City of Hoboken and appellant lost the benefit of their bargain, while the general public was duped into believing that their input would truly matter when, in reality, the proceeding was merely "full of sound and fury, [s]ignifying nothing." William Shakespeare, *Macbeth*, V, v, 15–17 (W.J. Craig ed., Oxford 1935).

bound to effectuate the intent of the Legislature when that mandate is clearly discernible form the words of a legislative act. This duty can not be compromised to achieve a sympathetic result.

## IV. CONCLUSION

Appellant's conviction in the Municipal Court of Hoboken for violating *N.J.S.A.* 4:19–20 is hereby **REVERSED,** and the parties are directed to comply with the terms and conditions of the settlement reached prior to June 22, 1995. Appellant to submit form of order. Respondent to indicate any objections under the five-day rule.