**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0343-17T2

TJM ATLANTIC CITY
MANAGEMENT LLC, d/b/a
THE CLARIDGE HOTEL,

     Plaintiff-Appellant,

v.

SCHINDLER ELEVATOR
CORPORATION,

     Defendant-Respondent.

_____

Argued October 31, 2018 – Decided January 27, 2020

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000029-17.

Douglas G. Leney and Jeffrey Nicholas Medio argued the cause for appellant (Archer & Greiner PC, and Jeffrey Nicholas Medio, attorneys; Douglas G. Leney and Jeffrey Nicholas Medio, on the briefs).

James L. Sonageri argued the cause for respondent (Sonageri & Fallon, LLC, attorneys; James L. Sonageri, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

In this appeal, the trial court found the Claridge Hotel in Atlantic City (Claridge) and the Schindler Elevator Corporation (Schindler) reached an enforceable settlement of litigation involving cross-claims of breach of contract. Claridge does not agree with that finding. After reviewing the record and based on prevailing legal standards, we affirm.

I

On March 3, 2014, Claridge and Schindler entered into a contract through which Schindler agreed to provide maintenance, cleaning, testing, and other related services on Claridge's elevators. On February 17, 2017, Jeffrey Medio, Claridge's in-house counsel, sent an email to two Schindler representatives confirming Claridge's prior counsel had notified Schindler that it was not renewing its elevator service contract. Medio also wrote:

> The purpose of this email is to notify you and your firm that your employees and agents no longer have access to the Claridge Hotel. Accordingly, no Schindler Elevator employees or agents have permission to be on the premises. Any employees or agents on the premises will be considered trespassers.

2

That same day, Schindler employees entered Claridge's property and removed technological components identified as "SIM chips" from seven Claridge elevators. In an email dated February 28, 2017, Medio apprised Schindler that it considered the employees who removed this technology trespassers and demanded the return of the SIM chips "on or before March 2, 2017." Schindler did not return the SIM chips.

On April 7, 2017, Claridge filed a complaint and order to show cause (OTSC) against Schindler in the Atlantic County Chancery Division, General Equity Part alleging: (1) breach of contract; (2) breach of good faith and fair dealing; (3) trespass to real property; (4) trespass to chattels; (5) conversion; (6) tortious interference with an economic relationship; and (7) specific performance. On April 6, 2017, Schindler filed a two-count complaint against Claridge in the Morris County Law Division alleging breach of contract.

Claridge's cause of action came before the General Equity judge in Atlantic County on April 11, 2017, the return date of the OTSC. The judge granted Claridge's application for a temporary restraining order (TRO) against Schindler, enjoining it from disposing or modifying the SIM cards and related components or "wiring diagrams corresponding to the Schindler-manufactured

A-0343-17T2

elevators located at [Claridge's] property[.]" The judge scheduled a hearing on April 18, 2017 to consider whether to modify or vacate the TRO.

These procedural safeguards proved to be unnecessary. The parties reached a purported settlement agreement on the day the judge scheduled the hearing. In response to the judge's request, the attorney representing Schindler placed on the record the following terms of the settlement agreement:

> SCHINDLER'S COUNSEL: [T]he parties have agreed that Schindler will not return the SRM cards or SIM cards to the Claridge for use in the elevators. However, Schindler has agreed to provide a software . . . upgrade for the seven Schindler elevators at the Claridge. The Claridge has agreed to pay Schindler $5,000.00 per elevator for the total of $35,000.00 for the software upgrade to be completed. We have discussed timing and we have agreed to put an outside date for the completion of the software upgrades of June 2, 2017.
>
> We have also agreed that we will bill Claridge for the software upgrades at a higher amount, which will resolve the settlement litigation.
>
> The total amount that Claridge will pay Schindler will be $100,000.00, but Schindler will bill it to the Claridge as $100,000.00 representing the cost of the software upgrades for the seven elevators.
>
> All temporary restraints will be vacated. We will exchange mutual releases. I will prepare a settlement agreement and mutual release for review by counsel. And upon that, we will then execute a stipulation of dismissal with prejudice of this Chancery litigation.

A-0343-17T2

And then I will also prepare a stipulation of dismissal with prejudice of the earlier filed action, which was Schindler Elevator Corporation versus TJM Atlantic City Management LLC, a/k/a TJM Atlantic City, which was filed in Morris County on April 7, 2017[.][1]

THE COURT: Okay. Gentlemen, does that comport with your understanding of the re -- of the settlement?

CLARIDGE'S LITIGATION COUNSEL: It does, Your Honor.

CLARIDGE'S IN-HOUSE COUNSEL: It does, Your Honor.

Schindler's counsel also placed on the record that as part of the settlement agreement, Schindler agreed to permit Claridge to have "one or as many people as they want present while Schindler is inspecting or installing the upgrades, but that there will be no representatives of Jersey Elevator or any other elevator competitor when Schindler is either inspecting or doing its work." Medio explained that in lieu of having an employee of a competitor elevator service company present, Schindler agreed to provide something akin to a "new owner's manual[,]" that would show "the newest version[s] . . . of software."

---

[1] Although Schindler's attorney stated the complaint was filed on April 7, 2017, the copy of the complaint provided as part of the appellate record is dated April 6, 2017.

A-0343-17T2

In response, Schindler's attorney noted that as part of his recitation of the terms of the settlement agreement, he neglected to include a date certain for his client to receive the final payment. Claridge's litigation counsel argued that payment "would follow the timeline of work being completed." The judge suggested that payment be rendered "[u]pon completion of services." Schindler's attorney argued his client wanted "an end date of June 2, 2017." Medio agreed and the judge found it "reasonable." The judge directed the attorneys to prepare and review the consent order. The judge also apprised counsel that he was leaving in two days and would be away for a week.

> THE COURT: So . . . hopefully [it] will be sitting on my desk ready to sign. You both have consented to it. All is well. I don't . . . think you're going to be able to agree on it now. Is there anything else that you need to put on the record?
>
> SCHINDLER'S COUNSEL: No, Your Honor. What I would say in that regard is that certainly we should have that consent order to Your Honor by the time you return. But as Mr. Medio has just said, we're going to start the process of doing it, so I'm not --
>
> . . . .
>
> - - we're not going to hold it up subject to the consent order.
>
> THE COURT: No.

A-0343-17T2

SCHINDLER'S COUNSEL: Because I know that counsel and I are both busy the next couple of days anyway.

THE COURT: Right, right.

SCHINDLER'S COUNSEL: So[,] we're going to go based upon this settlement agreement that's agreed to . . . on the record?

CLARIDGE'S IN-HOUSE COUNSEL: Yes, understood.

SCHINDLER'S COUNSEL: Okay, great.

II

The parties thereafter engaged in a series of emails that dealt mostly with attempts to schedule a date and time for Schindler's staff to access Claridge's property and complete the work on the elevators. Both parties' appellate briefs refer to a hearing the trial judge conducted on May 5, 2017, in which, according to Claridge, the judge "directed" Schindler "to complete the survey and Upgrades without the presence of third-party elevator personnel." Claridge disputes this material statement of fact without providing a specific citation to the appellate record, in violation of Rule 2:6-2(a)(5). Moreover, Claridge's appendix does not contain either: (1) a transcript of this alleged hearing; or (2) an order dated May 5, 2017 issued by the General Equity judge reflecting the decision of the court, both in violation of Rule 2:5-4(a).

In a letter dated May 10, 2017, Claridge's litigation counsel made the following claims to the General Equity judge:

> Please accept this correspondence as an update to the status of the <u>settlement terms reached between the parties</u> in the above referenced matter. As Your Honor is aware, the outcome of the telephonic hearing conducted last Friday May 5, 2017 (the May 5th Hearing) was that [p]laintiff [Claridge] would not be permitted to have representatives of an elevator servicing company present while [d]efendant [Schindler] performed its survey/inspection and upgrades to the subject elevators, but that [p]laintiff could have its own representatives present during same, and photograph, video, or otherwise record those procedures. Your Honor also implored [d]efendant at the May 5th Hearing once again to get to the [p]laintiff's property as soon as practicable to begin these procedures, <u>as the terms of settlement</u> provided for the initial survey/inspection to be done within five (5) days of the parties' initial hearing in this matter (April 18, 2017, nearly three weeks ago).
>
> [(Emphasis added).]

In its appellate brief, Schindler alleges: "On April 28, 2017, Schindler's technicians arrived at The Claridge to survey the elevators for the upcoming software upgrades." In support of this statement of fact in respondent's brief, Schindler's counsel cites to a letter he sent to the General Equity judge on May 26, 2017. This citation does not comply with the requirements of <u>Rule</u> 2:6-4(a). The genesis of this problem can be traced to the judge's failure to adhere to <u>Rule</u>

8

1:2-2, which, subject to certain exceptions not relevant here, requires "all proceedings in court shall be recorded verbatim[.]" Claridge was the party who sought the telephonic hearing held on May 5, 2017. The judge should have directed Claridge to make the necessary arrangements to ensure counsels' interactions and the court's ultimate determination in this telephonic hearing were preserved in a verbatim record from which a transcript suitable for appellate review could be created.[2]

Unfortunately, the parties continued to communicate their intransigence on matters related to the implementation of the settlement agreement in a manner that displayed an utter disregard for the rules governing how attorneys should interact with the court involving pending litigation. Thus, in lieu of filing a formal motion pursuant to Rule 1:6-2(a) supported, where necessary, by an affidavit made in compliance with Rule 1:6-6, the attorneys sent lengthy

---

[2] The only judicial acknowledgement of this telephonic hearing does not surface until the end of the case on August 25, 2017. In the course of delivering his oral decision denying plaintiff's motion for reconsideration, the judge made the following oblique reference to the May 5, 2017 telephonic conference:

> [T]his [c]ourt conducted a telephonic case management conference on May 5th. The substance of that discussion only involved, again, who was permitted to be present during the installation of the elevator upgrades.

correspondences replete with incompetent factual assertions directly to the judge.

For example, in a letter dated May 25, 2017, Claridge's litigation counsel requested the court to "[p]lease accept this correspondence in lieu of a more formal application by [Claridge] . . . seeking a hearing date on this [c]ourt's Order to Show Cause originally entered on April 11, 2017 . . . for the reasons more fully set forth herein." The three-page letter contained a total of nine single-spaced, unnumbered, bullet-point-paragraphs, and three footnotes. In this document, Claridge's litigation counsel described the factual foundation for his legal arguments. The letter ended with the following prayer for relief:

> In summary, it appears that the Settlement reached in this matter is unfortunately not a realistic option. Either the Upgrades were negligently performed, or -- as Claridge suspects -- the Upgrades were never a true substitute for the functionality of the SIM Cards which were wrongfully taken from Claridge. In light of the foregoing, Claridge would respectfully request that the OTSC be relisted for hearing at the [c]ourt's earliest convenience, in order to determine, inter alia, whether Claridge is entitled to an immediate return of the SIM Cards pending the underlying litigation, as more set forth in Claridge's Application.
>
> [(alteration in original).]

Claridge's letter predictably triggered an equally ad hoc response from Schindler's counsel in the form of a letter dated May 26, 2017 to the judge "in

opposition to [p]laintiff 'seeking a hearing date on this [c]ourt's Order to Show Cause originally entered on April 11, 2017.'" Schindler disputed Claridge's factual assertions and characterized the terms of the settlement allegedly reached on April 18, 2017 as "clear and unambiguous." Schindler's counsel ended the letter by claiming that Claridge's "sole right is to receive a copy of the owner's manual which will be provided upon payment of the settlement amount of $100,000.00."

III

On June 6, 2017, Schindler filed a formal motion "to enforce settlement," supported by a certification from counsel. The court heard argument on June 23, 2017, the return date of the motion. The judge read into the record the terms of the settlement agreement that Schindler's counsel placed on the record on April 18, 2017, and specifically noted Claridge's in-house counsel and its litigation counsel both acknowledged the accuracy of the terms and their agreement to abide by them. Schindler's counsel summarized his client's obligation under the settlement agreement as consisting of three items: "Software upgrades, owner's manual, [and] dummy invoice." The judge agreed.

Schindler's counsel claimed his client completed the software upgrades. He was "fully prepared, represented it to counsel, represent it in in open [c]ourt"

11

and that he would "provide the owner's manual and . . . the dummy invoice." Claridge's litigation counsel argued the settlement agreement required Schindler to upgrade the elevators and provide the owner's manual. Claridge also needed to determine whether this restored the same level of functionality the elevators had "when we had the SIM cards." Schindler's counsel argued the settlement agreement did not hold his client responsible for functionality.

After considering the arguments of counsel and the certifications submitted in the motion, the judge held the parties reached an enforceable agreement on April 18, 2017. The judge ordered Schindler to provide Claridge "the owner's manual and passwords" within seven days. The judge also ordered Claridge to send a check in the amount of $100,000 within seven days, made payable to the trust account of the law firm that represents Schindler in this litigation. The judge directed Claridge's attorney to prepare the order, which would also prohibit Schindler's counsel from withdrawing any part of the $100,000 "for any purpose until they receive . . . either the consent of counsel, if . . . everything's fine . . . or the consent of the Superior Court[.]"

The judge found this was "a reasonable way of resolving" this matter. The judge noted that "[i]f it does not work, you're going to have to set up a hearing, an evidentiary hearing where I'm going to make a determination. But at least

you will have fully performed what you were responsible for doing." The judge provided the following elaboration in response to Claridge's litigation counsel's inquiries:

> [I]f your clients are not satisfied, what I want you to do is call [Schindler's counsel] [and] schedule a conference call with me. I will set a date for a plenary hearing. At the plenary hearing, I do not want to, you know, reinvent the wheel. I want to -- I want testimony from Claridge as to what they feel those software upgrades and the owner's manual that were provided were not in accordance with the settlement, and I'm going to expect some testimony from [Schindler's counsel's] client as to whether they complied with what . . . they said they were going to do.
>
> It's going to be an enforcement of the settlement plenary hearing, simply put[.]

The judge signed the order in response to Schindler's motion on July 7, 2017. The order directed Schindler to deliver to Claridge, within seven days, an owner's manual containing the necessary computer passwords. Schindler was also required to provide Claridge an invoice for $100,000.00 that itemized the upgrades installed. The court directed Claridge to send Schindler's counsel, within seven days, a check in the amount of $100,000.00 payable to the firm's trust account. These funds were not to be distributed without express written authorization from Claridge or an order of the court.

13

Further, the court authorized Claridge to submit written questions to Schindler regarding the software upgrades within fourteen days of delivery of the owner's manual. Schindler had fourteen days to respond to Claridge's questions. Following Schindler's response, "either party may advise the [c]ourt of the status of the matter and apply to the court for a further ruling[.]"

On July 14, 2017, Claridge filed a motion for reconsideration of the court's July 7, 2017 order which found the parties reached an enforceable settlement. In a memorandum of law submitted in support of the motion, Claridge argued "that . . . [because] it appears there was never a meeting of the minds between the parties, no enforceable agreement ever existed between Claridge and Schindler." Alternatively, Claridge argued the matter should proceed to a plenary hearing pursuant to Rule 4:67-5.

In a certification in support of the motion, Claridge's litigation counsel acknowledged that on April 18, 2017, the parties "reached a settlement in principle, certain material elements of which were read into the record on that date." Without citing to a particular section of the transcript of the April 18 hearing, Claridge's litigation counsel claimed the settlement required Schindler to "perform certain changes to the elevators' computers that were characterized by Schindler in chambers as 'software upgrades'. . . to the elevators which would

return the elevators to the same level of functionality and safety as if they had SIM Cards[.]" However, according to Claridge, "since the completion of the . . . 'Upgrades,' the Schindler-manufactured elevators are in no better shape from a functionality and testing perspective than they were prior to the Upgrades."

Schindler's counsel responded to Claridge's motion in a self-described letter memorandum brief. The letter merely recounted the factual and procedural journey of this contentious litigation. Schindler's counsel did not submit a certification or affidavit to support his factual contention as required by <u>Rule</u> 1:6-6, nor cite relevant legal authority to support his client's position.

Claridge's motion for reconsideration came before the judge for oral argument on August 25, 2017. At this hearing, Claridge's litigation counsel[3] argued plaintiff was seeking "two disjunctive forms of relief": (1) "reconsideration that there exists a valid and enforceable settlement . . . as a matter of law;" or (2) a plenary hearing to enable the court to decide whether there exists a valid enforceable settlement as a matter of fact.

The record of the motion hearing shows Claridge raised the same arguments the judge had previously considered and rejected. Schindler's counsel's argument is noteworthy only in one particular respect; when the judge

---

[3] Claridge's in-house counsel also entered his appearance on the record.

asked him to respond to Claridge's arguments, Schindler's counsel addressed the

court as follows:

> I've handed you [the judge] <u>a transcript of the conference, telephonic hearing with the Court on July 25th, 2017</u>. I direct you respectfully to page 5, lines 15-18. I'll follow [Claridge's counsel] and read it.
>
>> "THE COURT: — is — by the way, let me just interrupt you for one second. Let me interrupt you for one second. It's also my position that there's an enforceable settlement. It's my position that there's an enforceable settlement."
>
> A settlement is a settlement. We've complied. They finally complied by giving me the $100,000. This case is over. Over. No more hearings, no more claims for damages. This case is over. Your Honor says . . . :
>
>> "<u>Motion denied. Case dismissed with prejudice</u>. Move on your separate ways. [The judge addressing Schindler's counsel][:] <u>give your client the money</u>."
>
> [(Emphasis added).]

At the conclusion of the attorneys' legal argument, the judge applied the

standard codified in <u>Rule</u> 4:49-2, as construed by our colleague Judge Harris in

his often cited opinion <u>D'Atria v. D'Atria</u>, and found no legal or factual basis to

reconsider his earlier decision. 242 N.J. Super. 392, 401 (Ch. Div. 1990). At

this point, the judge shifted his analysis and raised the question of damages.

Specifically, the judge addressed whether Claridge should be entitled to pursue a claim for damages in the Law Division for breach of the settlement agreement.

> THE COURT: Now let me . . . get into one concern that I have. My inclination is to refer this matter to the Law Division. If there's any further proceedings, I don't know, they would be proceedings for damages for non-performance of the agreement because [Claridge's litigation counsel's] contention is . . . that Schindler did not perform what it was required to perform. Now that . . . Claridge has performed what it has been required to perform, they've delivered the $100,000 to you, and [addressing Schindler's litigation counsel] I'm going to order — I want you to prepare this order — I'm going to order that you can release the $100,000 to your client. But the only, there is one opening for [Claridge's litigation counsel] if he decides to take it, and that is he does contend . . . that the technical provisions of the order were not performed . . . by Schindler in that they did not give the plaintiff what the plaintiff bargained for.

Although the judge was certain the parties reached a settlement agreement, he remained uncertain about whether Schindler "delivered to . . . Claridge what it was supposed to have delivered." In this light, the judge wondered whether "there's an opening for a plenary hearing in that matter." The judge continued to ponder the implications of a potential damages claim by Claridge:

> I think [there] . . . should be part and parcel of your damage claim if you have a damage claim against Claridge, and if they didn't deliver what they were

17

required to deliver maybe there were damages that were, that were attendant to that failure. But I don't know whether that should be in front of me or it should be in the Law Division <u>because I see it now as essentially a claim for damages by Claridge against, against Schindler</u>.

[(Emphasis added).]

Without abandoning his legal position as to the unenforceability of the settlement agreement, Claridge's litigation counsel did not object to a judgment entered by the Chancery Division, General Equity Part finding the settlement agreement enforceable and thereafter transferring the case to the Law Division. After the judge reached this critical conclusion, he apprised Schindler's counsel that he was "going to order . . . the $100,000 paid over be distributed to your client." This prompted the following colloquy between the court and Schindler's counsel:

> SCHINDLER'S COUNSEL: Judge, I got to tell you, respectfully, you're wrong on that one.
>
> . . . .
>
> If we have a settlement, we have a settlement. Their plenary hearing is to come back and say, "Oh, no. You didn't get what you said you were supposed to get in the settlement."
>
> . . . .

By definition Your Honor ruled there's a settlement. They got what they were supposed to get. They got the software upgrades.

THE COURT: No, no, no, no. I said there was a — there was a — I'm ruling that there was a . . . that was a settlement.

. . . .

And that they were entitled to receive certain things from Schindler. You were entitled to receive certain things from Claridge. You have now received $100,000 from Claridge. Their claim is that they did not receive what they were supposed to have received from you. I am not ruling that you — that Schindler has fully performed under the settlement. I have no idea whether Schindler . . . fully performed under the settlement. Do you understand what I'm saying?

SCHINDLER'S COUNSEL: There's no evidence, there is no evidence before Your Honor that Schindler did not fully perform under the settlement.

THE COURT: This is their claim . . . There's no evidence because I haven't taken evidence.

SCHINDLER'S COUNSEL: No, but my point is they're talking about a plenary hearing as to the software upgrades. They've never denied receiving the software upgrades. They've never denied receiving the owner's, the owner's manual or the password, and they certainly haven't come back and said to you that there are issues with the operation of the elevator. I point to the order because I think it's telling. They could have submitted questions to us. They submitted no questions to us.

. . . .

Clearly if you've submitted no questions to me, you must be satisfied.

THE COURT: Wow, that's a leap. But I don't know how clear that is . . . [.]

[(Emphasis added).]

In an order dated August 31, 2017, the judge authorized Schindler's counsel "to immediately transfer the $100,000.00 being held in its trust account to Schindler Elevator Corporation[.]" The judge further handwrote: "Any further proceedings are hereby transferred to the Law Division as they concern monetary damages claimed for non-performance of the settlement agreement."

IV

It is well-settled in our State that a settlement agreement between parties to a lawsuit is a contract. Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983). "Settlement of litigation ranks high in our public policy." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting Jannarone v. W.T. Co., 65 N.J. Super. 472 (App. Div. 1961)). We review a trial court's construction and interpretation of a contract de novo. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009). Under this standard of review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not

20

entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995).

In Nolan, our Supreme Court commented that settlement agreements will not be vacated absent "fraud or other compelling circumstances." 120 N.J. at 472. Thus, a party challenging the enforceability of a settlement agreement must present "clear and convincing evidence" to vacate a settlement agreement. Kaur, 405 N.J. Super at 475 (quoting De Caro v. De Caro, 13 N.J. 36, 42 (1953)).

The factual and procedural record we have described at length here reveals the parties' positions in this appeal. Claridge argues the General Equity judge erred because the terms of the settlement placed on the record by Schindler's counsel did not include essential elements critical to the sound operation or "functionality" of the elevators. Schindler argues the transcript of the April 18, 2017 settlement hearing reflects the parties reached an enforceable settlement agreement. After conducting a de novo review of the record before us, we conclude the parties reached an enforceable agreement.

As a starting point, oral agreements will be enforced even if the agreement is never reduced to writing because a party reneges. Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993). "A settlement agreement usually involves the payment of money by one party in consideration for the dismissal

21

of a lawsuit by the other party." Thompson v. City of Atlantic City, 190 N.J. 359, 379 (2007). As the intent of the parties can be ascertained "and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016).

After a full day of negotiations, the parties reached a settlement. Schindler's counsel described the terms of the settlement agreement on the record:

> (1) Schindler will not return the SRM cards or SIM cards to the Claridge for use in the elevators;
>
> (2) Schindler agreed to provide a software upgrade for the seven elevators it fabricated and serviced;
>
> (3) Claridge agreed to pay Schindler $5,000.00 per elevator for the software upgrade;
>
> (4) the parties agreed that Schindler would complete the software upgrades by "an outside date" of June 2, 2017;
>
> (5) Schindler agreed to permit Claridge's employees to be present while Schindler inspects or installs the software upgrades;
>
> (6) no representatives of Jersey Elevator will be allowed to be present;
>
> (7) Schindler agreed to provide a "manual" that shows the software upgrades;

(8) Claridge agreed to pay Schindler a total of $100,000 for the work involved in the software upgrades for the seven elevators;

(9) the TRO entered by the General Equity Part will vacated and the parties will exchange mutual releases;

(10) the parties agreed to execute a stipulation of dismissal with prejudice in this litigation; and

(11) Schindler agreed to dismiss with prejudice the complaint it filed in Morris County.

The record shows that both Claridge's in-house counsel and litigation counsel acknowledged on the record that these terms accurately reflected the parties' settlement agreement. The "functionality" of the elevators was not a part of the settlement agreement. We also reject the concerns raised by Claridge in the context of a motion for reconsideration. Schindler's motion asked the court to determine whether the parties reached an enforceable settlement agreement on April 18, 2017. Any issues or matters arising from the implementation of the settlement agreement are outside the scope of this appeal.

Finally, we cannot conclude without expressing our strong disapproval of the ad hoc approach employed by the attorneys, as well as the judge's failure to follow and enforce rudimentary procedural principles codified by the Supreme Court in the rules governing our courts. The wholesale departure from the rules governing the adjudication of civil disputes that permeated this case

23

significantly impedes meaningful appellate review and undermines the transparency of the judicial process.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION