130 N.J. Super. 130 (1974)
325 A.2d 832
NORMA HONEYWELL AND JANICE WESTDYK, PLAINTIFFS-APPELLANTS,
v.
BRUCE C. BUBB AND MARILYN B. BUBB, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1974.
Decided September 30, 1974.
*132 Before Judges CARTON, CRANE and KOLE.
Mr. Neil I. Kilstein argued the cause for appellants (Messrs. Kreiger, Karas & Kilstein, attorneys).
Mr. Henry Ramer argued the cause for respondents (Messrs. Gaeta and Gaeta, attorneys).
The opinion of the court was delivered by CARTON, P.J.A.D.
Plaintiffs Norma Honeywell and Janice Westdyk appeal, pursuant to leave granted, from an order of the Chancery Division denying their motion to enter judgment in accordance with the terms of a settlement agreement allegedly agreed upon by the parties.
Plaintiffs, who are sisters, brought action against their brother, defendant Bruce C. Bubb, and his wife Marilyn, to set aside a conveyance of real property from the late Evelyn W. Bubb, mother of the parties, to defendants as tenants by the entirety. After a pretrial conference held in June 1973 the case was scheduled for trial on the following October 2. Prior to actual commencement of the trial the parties agreed upon a settlement and its terms were spread upon the record. Thereafter defendant Bruce C. Bubb advised his attorney that he would no longer honor the settlement and retained other counsel to represent him. Whereupon plaintiffs moved for entry of judgment on the settlement. The presiding judge denied this motion, restored the *133 matter to the trial calendar, and disqualified himself from hearing the case.
The conveyance took place in September 1971. The real estate conveyed by the deed comprised the bulk of decedent's estate. About four months earlier decedent had executed a will dividing her estate equally among her three children. Decedent died on January 23, 1972. In their action plaintiffs sought to set aside the deed made by decedent on the ground of undue influence by defendant Bruce Bubb and to obtain an accounting from him in his capacity as executor of decedent's estate.
Plaintiffs and their brother, defendant Bruce C. Bubb, were in court when the case came on for trial. Defendant Marilyn Bubb was not present. However, the record indicates she was in telephone communication with her attorney. After settlement negotiations involving offers and counter-offers, an agreed figure of $25,000 was arrived at in full settlement of all of plaintiffs' claims relating to the real estate and their interest in the estate of their late mother. The real estate involved had a value estimated at somewhere between $50,000 and $60,000.
The record shows that the trial judge asked that the terms of the settlement be placed on the record. It also shows that plaintiffs' counsel made a brief statement as to the nature of the action and the terms of the settlement. Defendants' counsel was present at the counsel table and concurred with the statement of settlement as presented by plaintiff's counsel. Defendant Bruce C. Bubb was sworn as a witness. He was examined by his own attorney, by plaintiffs' counsel and by the court, during the course of which examination he acknowledged that he fully understood the terms of the settlement and concurred with it. Plaintiffs were not sworn as witnesses but were present in court and acknowledged their understanding and acceptance of the settlement. The court then indicated that a formal stipulation of dismissal or order should be submitted for the record. However, when plaintiffs' counsel prepared the *134 stipulation he was informed that defendants refused to abide by its terms. The proceedings to confirm the settlement and the present appeal followed.
At the hearing before the court on December 5 in proceedings on a motion by defendants to set aside the settlement, the court commented:
Based upon the information I have before me * * *, it was a good settlement  I am very reluctant to set the matter aside. However, you [defendant] raised a point which I cannot permit to remain without being aired fully. You have raised a question concerning the Canons of Ethics, and I will not permit the situation to remain settled when you have challenged the settlement because of the potential or possible infringement of those Canons.
I will set the matter aside, very reluctantly I might say * * *, for the reasons I have enunciated. * * *
Thus the court took no exception to the ostensible fairness of the settlement reached below, but rather found that ethical considerations embodied in DR5-101 (B) and DR5-102(A) were so compelling, in his opinion, as to warrant trial of the issues involved and disposed of in the settlement agreement.
DR5-101 (B) relates to the obligation of a lawyer to refuse employment when his interest may impair his independent professional judgment. It provides:
A lawyer shall not accept employment in contemplated or pending litigation if he knows or believes that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment, and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case. [Emphasis added].
*135 DR5-102(A), pertaining to the withdrawal of counsel when he becomes a witness, provides:
If, after undertaking employment in contemplated or pending litigation, a lawyer learns or believes that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue in the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR5-101(B) (1) through (4).
The record below reveals that the deed was drafted by Robert P. Alliegro, defendants' attorney. This attorney represented them up to and including the period of settlement negotiations. Aside from the insubstantial argument that the $25,000 settlement figure of record is per se unreasonable, defendants' rejection of the settlement is predicated on the theory that attorney Alliegro, because of a concern for his own potential involvement in the controversy in which he had represented defendants, unduly influenced their acquiescence in the settlement. The basis for the attorney's alleged impropriety is said to rest in DR5-101(B) and DR5-102(A) which preclude a lawyer from accepting employment in a case in which the lawyer may be required as a witness and require a lawyer to withdraw if he does become a witness. This circumstance, they argue, coupled with the allegedly inconscionable circumstances surrounding the settlement, warrants setting it aside.
We do not agree. Embedded in our jurisprudence is the principle that the settlement of litigation ranks high in our public policy. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957), cited with approval in Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961), certif. den. sub nom Jannarone v. Calamoneri, 35 N.J. 61 (1961). As the court said in Carlsen v. Carlsen, 49 N.J. Super. 130 (App. Div. 1958),
Since stipulations in court made by attorneys when acting within the scope of their authority are enforceable against their clients certainly, stipulations by attorneys and their clients before the court and in the record must, a fortiori, be enforceable. * * * [at 137]
*136 Thus, barring fraud or other compelling circumstances, our courts strongly favor the policy that the settlement of litigation be attained and agreements thereby reached, be honored. See DeCaro v. DeCaro, 13 N.J. 36, 41-42 (1953), where the court found that appellant therein had failed to establish fraud, mutual mistake, undue haste, pressure or unseemly conduct in settlement negotiations.
Moreover, courts will not ordinarily inquire into the adequacy or inadequacy of the consideration underlying a compromise settlement fairly and deliberately made. Clarkson v. Kelly, 49 N.J. Super. 10, 18-19 (App. Div. 1958). In the present case, the trial judge expressed the opinion that, apart from the disciplinary rule considerations, it was a "good settlement" and one that he set aside "very reluctantly." Thus, the precise question presented is whether a settlement which appears otherwise beyond reproach should be invalidated solely because of a possible infraction of disciplinary rules governing the conduct of the lawyer involved.
Our research discloses no judicial decisions or opinions of the Advisory Committee on Professional Ethics which have specifically considered the duties of a lawyer conducting pretrial settlement negotiations who is likely to be a witness at trial. Compare Opinions No. 233, 95 N.J.L.J. 206 (3/9/72) and No. 251, 96 N.J.L.J. 234 (2/22/73). The relevant ethical considerations set forth in the American Bar Association's Code of Professional Responsibility (F.D. 7/1/69), EC5-9 and EC5-10, focus on the related question concerning the conflicting responsibilities which may arise from acting in the capacity of both witness and trial counsel. However, the same general principles would seem to apply.
It would seem that at least the appearance of a conflict of interest may be created if an attorney likely to be called as a trial witness plays an active role in the pretrial settlement conferences. For example, in recommending approval of a particular settlement, he might be open to the charge that he was motivated to sacrifice his client's interest to avoid any question as to a later development in the case which *137 might bring him in conflict with the disciplinary rules cited above; or to avoid giving potentially embarrassing testimony at trial, or to retain the benefits accruing from representing a client which might be lost if other trial counsel were required.
The attorney here did make arrangements for substitute trial counsel, which suggests that he recognized the possibility, if not the likelihood, he would be needed as a trial witness. Under these circumstances, it would have been preferable in the spirit, if not the letter, of the rules referred to, for the attorney to refrain from active participation in the settlement negotiations.
However, the substantial question before us is whether the settlement agreed upon by the parties was unfair or achieved in such a manner as to justify refusal to enforce it. In view of the strong policy favoring the settlement of controversies, the refusal to enforce the settlement should not obtain because of a possible infraction of the disciplinary rules referred to unless there is some basis for concluding that the attorney's conduct had an adverse impact on the settlement. Absent circumstances indicating that his conduct may have improperly influenced the course of settlement negotiations to the detriment of his clients' interests, we see no valid basis for disturbing a settlement otherwise fair. We find nothing in the record before us to support a conclusion that the settlement was so tainted. The facts that the court (1) approved the settlement when the parties agreed to it, (2) caused its terms to be spread on the record, and (3) reiterated the view that it was a fair one when the court later denied plaintiffs' motion to confirm it, point to the contrary. We see no basis in the record for a plenary hearing on whether the settlement should be enforced.
The order appealed from is reversed and the matter remanded for entry of judgment in accordance with the terms of the settlement agreed upon. No costs.