876 A.2d 853

COLUMBIA PRESBYTERIAN ANESTHESIOLOGY, PLAINTIFF–
APPELLANT, v. MICHAEL BROCK, DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 2005—Decided July 5, 2005.

Before Judges STERN, WECKER and GRAVES.

*M. Richard Scheer,* argued the cause for appellant (*Craner, Satkin & Scheer,* attorneys; *Mr. Scheer,* on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

GRAVES, J.A.D.

This is a Special Civil Part collection case. Plaintiff appeals from three separate orders, each denying plaintiff's application to enforce a stipulation of settlement. We reverse.

Plaintiff rendered anesthesiology services to defendant, Michael Brock. When the balance due for services went unpaid, plaintiff filed a complaint alleging that the sum of $4,397.10, was due and owing, together with costs and statutory attorney's fees pursuant to *N.J.S.A.* 22A:2–42. In his answer, dated August 29, 2002, defendant did not deny the debt or dispute that plaintiff was entitled to be paid the sum of $4,397.10.

On the standard answer form, which was provided to defendant and which is "made available to litigants by the Clerk of the Special Civil Part," *R.* 6:1–1(g), defendant could have selected

from a list of six possible defenses to plaintiff's claim. The standard form provides as follows:

Check the appropriate statement or statements below which set forth why you claim you do not owe money to the plaintiff.

___ (1)  The goods or services were not received.

___ (2)  The goods or services received were defective.

___ (3)  The bill has been paid.

___ (4)  I/We did not order the goods or services.

___ (5)  The dollar amount claimed by the plaintiff(s) is incorrect.

___ (6)  Other–Set forth any other reasons why you believe money is not owed to the plaintiff(s). _____

_____
_____

[Pressler, *Current N.J. Court Rules,* Appendix XI–F at 2627 (2005).]

Defendant checked only statement (6) on the form, and he wrote: "see attached sheet."

In the letter attached to his answer, defendant stated:

In the spring of 2001 I started to receive insurance payments for my recent surgeries. At the time I was incapacitated and had no one to help me take care of my medical financial responsibilities. The insurance checks were never cashed. I informed Blue Cross/Blue Shield of Central N.Y. of my dilemma and was told that because of the union contract with my former employer the checks must be sent to me, and not directly to the service provider.

I am currently starting to get on my feet a little and it is my every intention to see that all medical service providers be paid. I've been in touch with my health insurance carrier and they will replace all checks. Social Security Disability is my only means of support. In addition, I'm not eligible for food stamps, Medicaid or Medicare.

Currently, I'm not able to pay any balances after insurance, however, I might be able to pay $5–a month until I can go back to work. This is not meant as an insult, it's just that I have several service providers to account for and am doing whatever I can. I've informed the collection agent for Craner, Satkin, & Scheer, attorneys for the Plaintiff, that an insurance payment check for $1,479.00 is forthcoming. And their agent has sent me a copy of the bill so I can further resolve the claim with my carrier. I'm terribly sorry for the inconvenience and will do what I can.

As promised, defendant made a substantial payment and the parties settled their differences prior to trial. The case was marked "settled" on the trial date, and a fully signed stipulation of settlement was filed with the trial court on October 30, 2002. The written stipulation of settlement contained only three provisions:

It is hereby stipulated and agreed by and between the parties hereto as follows:

1. That there is due the plaintiff from the defendant(s) the sum of $2,925.27.

2. That no further action shall be taken in this matter by the plaintiff provided defendant shall pay on account of the debt hereinabove stated to the plaintiff's attorney the sum of $10.00 per month beginning November 1, 2002 through October 1, 2004 then to be renegotiated for terms consistent with defendant's then income.

3. In the event of a default of any payment to be made by the defendant there under which shall continue for a period of more than ten (10) days, then upon filing a certification of such default by plaintiff's attorney without notice, plaintiff may proceed to enter judgment for the sum set forth in the complaint, less any payments made hereunder, plus interest and costs.

Prior to defaulting, defendant made twelve monthly payments, each in the amount of ten dollars. His last payment was made on October 7, 2003. As provided in the stipulation of settlement, following the default, plaintiff's attorney filed his certification together with a proposed order for entry of judgment with the court. Plaintiff's attorney explained that a stipulation of settlement had been negotiated and filed with the court, and he attached a copy of it to his certification. Plaintiff's attorney certified that defendant had paid the sum of $1,753.56 on account prior to defaulting, and he also certified that the sum of $2,643.54 was "due and owing on the complaint."

On March 8, 2004, the court denied plaintiff's application for entry of judgment. The order indicates that "the total amount paid since the settlement exceeds that required by the settlement." We note, however, that the sums certified to by plaintiff's counsel were consistent with the amount alleged to be due and owing in plaintiff's complaint. ($1,753.56 + $2,643.54 = $4,397.10.) The total sum paid by defendant prior to default included both the money paid prior to settlement and defendant's twelve monthly payments thereafter. ($1,633.56 + $120 = $1,753.56.)

Plaintiff's subsequent notice of motion for entry of judgment was served upon defendant pursuant to *Rule* 6:3–3. Although defendant did not oppose plaintiff's motion for entry of judgment, plaintiff's application was denied. An order dated May 10, 2004, contains the following notation: "Since the judgment deals with

the amount demanded in the complaint rather than the settlement amount, there will have to be an affidavit of proof on the merits."

Plaintiff's third application for entry of judgment consisted of a notice of motion for reconsideration. In a supporting certification, plaintiff's attorney stated that there was no need for any further affidavits because "the debt in suit merged into the stipulation of settlement," and proof of the indebtedness was established by the stipulation of settlement together with "evidence of the breach and evidence of the payment on the settlement." Plaintiff's motion for reconsideration was denied on September 8, 2004, with the notation "Denied as before."

Following plaintiff's appeal, the trial court supplemented its findings in accordance with *Rule* 2:5–1(b). Citing to *Wasserman's Inc. v. Township of Middletown*, 137 *N.J.* 238, 645 *A*.2d 100 (1994), the judge wrote: "if a plaintiff seeks to enforce a settlement agreement that calls for a higher amount to be paid than that contained in the settlement, if the settlement is breached, he must show that the amount sought bears a 'reasonable relationship to the probable loss suffered by the plaintiff.' " The issue in *Wasserman*, however, was whether a stipulated damages provision in a cancellation clause of a commercial lease was an enforceable liquidated damages clause or an unenforceable penalty clause. *Id.* at 248, 645 *A*.2d 100. That case did not involve an agreement to settle pending litigation, and the issues addressed in *Wasserman* are not present in this case. Furthermore, as the Court noted in *Wasserman*, "the party challenging a stipulated damages clause 'must establish that its application amounts to a penalty.' " *Id.* at 253, 645 *A*.2d 100 (citation omitted). In this case, defendant has never claimed that plaintiff is not entitled to enforce the terms of the written stipulation of settlement dated October 22, 2002.

"It is the responsibility of our courts to 'secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.' " *State v. Hogue*, 175 *N.J.* 578, 584, 818 *A*.2d 325 (2003) (quoting *R*. 1:1–2). Unfortunately, those objectives were not achieved here. Even

though the settlement agreement was clear and straightforward, and plaintiff's proofs were never challenged or disputed by defendant, plaintiff still does not have what it is entitled to—a judgment.

In the third paragraph of the stipulation of settlement, the parties specifically agreed that if defendant failed to make a payment when due, and the default continued for more than ten days, then "plaintiff may proceed to enter judgment for the sum set forth in the complaint, less any payments made hereunder, plus interests and costs," "upon filing a certification of such default by plaintiff's attorney without notice." That has been done three times, with notice to defendant on two separate occasions, and defendant has never filed any opposition. In these circumstances, we see no justification for requiring plaintiff to file an additional "affidavit of proof on the merits." *Cf. R.* 6:7–1(d) ("A request to enforce a settlement agreement or consent judgment in a tenancy action shall be by certification.").

"Settlement of litigation ranks high in our public policy." *Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.2d* 143 (1990) (citation omitted). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 *N.J.Super.* 118, 124–25, 462 *A.2d* 186 (App.Div.) (quoting *Honeywell v. Bubb*, 130 *N.J.Super.* 130, 136, 325 *A.2d* 832 (App.Div.1974)), *certif. denied*, 94 *N.J.* 600, 468 *A.2d* 233 (1983). *Accord Nolan, supra*, 120 *N.J.* at 472, 577 *A.2d* 143; *Zuccarelli v. State, Dep't of Envtl. Prot.*, 326 *N.J.Super.* 372, 380, 741 *A.2d* 599 (App.Div.1999), *certif. denied*, 163 *N.J.* 394, 749 *A.2d* 368 (2000).

Defendant has never claimed that the settlement agreement was unfair, unreasonable, or unenforceable. The court, therefore, should have been guided by the general proposition that public policy strongly favors the settlement of litigation, and it should

have been more receptive to plaintiff's efforts to enforce the settlement. As Judge (now Justice) Long once stated:

> [T]he beginning point of this analysis is the strong public policy in this state in favor of settlements. The point of this policy is not the salutary effect of settlements on our overtaxed judicial and administrative calendars (although this is an undeniable benefit) but the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone. In recognition of this principle, courts will strain to give effect to the terms of a settlement wherever possible. It follows that any action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced.

> [*Dep't. of Pub. Advocate v. N.J. Bd. of Pub. Utils.*, 206 *N.J.Super.* 523, 528, 503 *A.*2d 331 (App.Div.1985) (internal citation omitted).]

Accordingly, the stipulation of settlement in this case should have been viewed by the court with a predisposition in favor of its validity and enforceability.

We were informed at oral argument that plaintiff's attorney intends to submit an amended certification to the trial court to correct a mathematical error in a prior submission that incorrectly credited defendant with making twelve monthly payments of $100 each, rather than the actual payments of $10 each month. This should be accomplished expeditiously upon receipt of this opinion.

The orders denying plaintiff's applications to enter judgment in accordance with the stipulation of settlement are reversed, and the matter is remanded for further proceedings consistent with this opinion.