965 A.2d 203 (2009)
405 N.J. Super. 468
Jagjit KAUR, Plaintiff-Respondent,
v.
ASSURED LENDING CORP., Moin Ali, and Alex Senderov, Defendants-Appellants.
Abhilasha Singh, Plaintiff-Respondent,
v.
Assured Lending Corp., Moin Ali, and Alex Senderov, Defendants-Appellants.
DOCKET NO. A-6287-07T2, A-6288-07T2.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 2009.
Decided March 5, 2009.
*204 John Morelli argued the cause for appellants in A-6287-07T2 and A-6288-07T2.
James B. Graziano argued the cause for appellant Assured Lending Corp. in A-6288-07T2 (Graziano, Piasecki, Whitelaw & Simko, LLC, attorneys; Mr. Graziano, on the brief).
Deborah L. Mains, Cherry Hill, argued the cause for respondents (Law Offices of Kevin M. Costello, P.C., attorney; Kevin M. Costello, on the brief).
Before Judges CARCHMAN, SABATINO and SIMONELLI.
The opinion of the court was delivered by
CARCHMAN, P.J.A.D.
In these appeals, which we consolidate, we consider the terms necessary in a settlement agreement to allow the parties *205 to seek reinstatement of the matter to the trial list after a default in the terms of the settlement. Here, the parties agreed that a default would permit the non-defaulting party to move before a court to reduce the outstanding amounts owed to judgment. Despite the absence of any language suggesting potential rescission of the agreement and restoration of the matter to the trial list, the motion judge found that the entry of judgment was not an exclusive remedy. He then vacated the settlement and restored the case to the trial list.
We now reverse and hold that settling parties who agree on a remedy of rescission and leave to restore a settled matter to the trial list upon default must include specific language preserving that remedy within the terms of the settlement agreement. Ultimately, the determination of whether the matter will be so restored rests within the discretion of the motion judge, but the right to seek leave for such relief should be explicitly preserved in the agreement.
These facts inform our opinion. Plaintiffs Jagjit Kaur and Abhilasha Singh filed separate actions under New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, against their employers, defendants Assured Lending Corp. (Assured), Moin Ali and Alex Senderov. This suit alleged that Ali and Senderov sexually and ethnically harassed plaintiffs during their employment with Assured. An answer was filed on behalf of all defendants. Assured's insurance carrier filed a limited substitution of attorney for Assured for "those allegations of the complaint seeking compensatory damages as the result of bodily injury."
The cases were consolidated for mediation and as a result of the mediation, the parties settled their respective actions. After extensive negotiations, the settlement was reduced to writing. Under the terms of the settlement each plaintiff was to receive $50,000. With regard to plaintiff Kaur, $10,000 was to be paid on or before March 12, 2008 by Assured's carrier as its sole contribution to the settlement. A separate payment of $5000 from Assured was due to the Kaur's attorney on March 12, 2008. Thereafter, two more installment payments from Assured were to be received by the attorney no later than May 12, 2008. Similar terms were agreed to as to plaintiff Singh.
The agreement contained other provisions related to enforcement and default relevant to our inquiry. Paragraph IV of the agreement provides:
IV. ENFORCEMENT

Any party may enforce any term or section of this Agreement, or may attempt to enforce an alleged breach of any duty related herein, by bringing an action in any court of competent jurisdiction in the State of New Jersey. Each party shall bear his/her own burdens, and shall bear all of his/her legal fees and expenses in bringing or defending any enforcement action.
For purposes of ease under this Agreement, all the parities agree that any enforcement action brought pursuant to this Agreement shall be venued in Camden County, New Jersey.
The exception to this provision regarding enforcement is in the event of breach by Defendant Assured Lending as to the due dates and/or amounts for payment related hereafter.
Paragraph V provides in relevant part:
V. SCOPE OF CLAIMS RESOLVED

This Agreement resolves any and all claims that may exist by, among and between the parties and which arose from the beginning of time until the *206 present. Specifically, and further, this Agreement resolves any and all claims brought by the plaintiffs in his or her Complaint, any and all counterclaims brought against plaintiffs by any defendants citing this Agreement, and also applies to any and all claims, known or unknown, arising from the beginning of time, until the present.
Finally, Paragraph XI provides:
XI. DEFAULT AS TO ALI, ASSURED LENDING AND/OR SENDEROV AS TO AMOUNTS DUE AND DUE DATES.

In the event that any payment due at a particular time and in a particular amount is not made in full by the appropriate date, then the amount not paid by the applicable date plus 10 days shall become a default under this Agreement.
In the event of a default, either plaintiff and/or both plaintiffs aggrieved by said default shall have the opportunity to immediately move the Court to reduce all outstanding amounts owed to a judgment for which Assured Lending agrees to become liable.
Although no interest shall be due on any of the monies prior to the date of said judgment, post judgment interest shall apply in accord with Court Rules.
Defendant Assured Lending agrees to be liable for any reasonable attorney's fees incurred by plaintiff or plaintiffs in pursuing a default judgment, and agree that such reasonable fees and costs shall be added to the total amount of the judgment.
In the event of a default, and prior to the entry of any judgment, the parties shall have the opportunity to make such other arrangements as are mutually agreeable to them.[1]
[(Emphasis added).]
Assured's carrier made its payment in accordance with the agreement and Assured, likewise, made its initial payment. On May 6, 2008, defendants' attorney requested a thirty-day extension for the payments due on May 12, 2008. Plaintiffs denied this request; however, as a courtesy, plaintiffs agreed to wait until two weeks beyond the due date before they took action regarding the settlement. On May 7, 2008, defendants' counsel sent a copy of a Stipulation of Dismissal to plaintiffs' attorney; however, plaintiffs never returned an executed Stipulation. Defendants then defaulted on their settlement payments and made no further payments.
On May 28, 2008, plaintiffs moved to set aside the settlement and resume active litigation. Defendants opposed the application and all parties relied on the interpretation of Section XI of the settlement agreement.
At the hearing, plaintiffs argued that:
This case wasn't settled until the money has been paid because Mr. Ali resisted like a badger in a trap being personally liable for this. And, that's why this was all important to us. That's why the stip[ulation] wasbeing held back was important to us. And, that's why recision [sic] is an appropriate remedy.
The judge focused on the second paragraph of Section XI in making his decision. The judge concluded:
THE COURT: That's a different point. Myhere's the critical point. I'm interpreting the words "shall have the opportunity" *207 to be the functional equivalent of the word "may". So, if I'm wrong, I'm wrong. But, that-that's where my mind set is at. So, that's where our disagreement is.
You think that "shall"once the word "shall" is in, it becomes mandatory no matter what the language is before or after. I interpret those four words that I just quoted as being the functional equivalent of "may". And, if I'm right that it is a functional equivalent of "may", then recision [sic] becomes an easy call. If I'm wrong, then my conclusion is wrong.
He then set aside the settlement and returned the matters to the active trial list. On defendants' motion, we granted leave to appeal.
We first address the issue of standard of review. Plaintiffs assert that we must consider whether the judge "abused his discretion" in restoring the matter to the trial list. We disagree.
The issue in question required the interpretation of the agreement entered into by the parties. We have addressed the appropriate standard in earlier decisions. The "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J.Super. 158, 190, 943 A.2d 881 (App.Div.), certif. denied, 196 N.J. 85, 951 A.2d 1038 (2008) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J.Super. 415, 420, 707 A.2d 209 (App.Div.1998)). A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Alfano v. BDO Seidman, LLP, 393 N.J.Super. 560, 573, 925 A.2d 22 (App.Div. 2007) (quoting Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995)).
Interpretation of a settlement agreement implicates significant legal and policy principles, and the standard for vacating a settlement is not easily met. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). The standard was described by the Supreme Court:
A settlement agreement between parties to a lawsuit is a contract. Pascarella v. Bruck, 190 N.J.Super. 118, 124, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983). "Settlement of litigation ranks high in our public policy." Jannarone v. W.T. Co., 65 N.J.Super. 472, 168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961). Consequently, our courts have refused to vacate final settlements absent compelling circumstances. In general, settlement agreements will be honored "absent a demonstration of `fraud or other compelling circumstances.'" Pascarella, supra, 190 N.J.Super. at 125, 462 A.2d 186 (quoting Honeywell v. Bubb, 130 N.J.Super. 130, 325 A.2d 832 (App.Div. 1974)). Before vacating a settlement agreement, our courts require "clear and convincing proof" that the agreement should be vacated. DeCaro v. DeCaro, 13 N.J. 36, 97 A.2d 658 (1953).
[Ibid.]
See also Brundage v. Estate of Carambio, 195 N.J. 575, 601, 951 A.2d 947 (2008) (restating the premise from Nolan that "settlements will usually be honored `absent compelling circumstances'"); Thompson v. City of Atlantic City, 190 N.J. 359, 374, 921 A.2d 427 (2007) (restating the premise from Nolan that a "`settlement agreement between parties to a lawsuit is a contract'"); Grow Co. v. Chokshi, 403 N.J.Super. 443, 464, 959 A.2d 252 (App. Div.2008) (restating the premise from Nolan *208 that "the settlement of lawsuits, as a policy matter, ranks high").
Most recently, the Court again reiterated those considerations that are relevant to vacating a settlement agreement. In Brundage, supra, the Court noted:
However, "[i]f a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside."
[Id. at 600, 951 A.2d 947 (quoting Peskin v. Peskin, 271 N.J.Super. 261, 276, 638 A.2d 849 (App.Div.) certif. denied, 137 N.J. 165, 644 A.2d 613 (1994)).]
With these principles in mind, we review the motion judge's determination to set aside the settlement and order the matter reinstated to the trial list.
In setting aside the settlement, the judge correctly focused on the key operative provision of the contract, which states: "[i]n the event of a default, either plaintiff and/or both plaintiffs aggrieved by said default shall have the opportunity to immediately move the Court to reduce all outstanding amounts owed to a judgment for which Assured Lending agrees to become liable." (emphasis added). The motion judge interpreted "shall have the opportunity" to be the "functional equivalent of the word `may.'" He concluded that seeking judgment against Assured for the outstanding payments was an option and not the exclusive remedy for plaintiffs.
Although the judge's decision may on its surface appear plausible, we do not deem the contractual language to be ambiguous or necessitating further inquiry. Most important, we disagree with the ultimate remedy afforded plaintiffs. Both parties concede that the negotiations to achieve the settlement and draft the settlement agreement were arduous and extended. In fact, the record demonstrates that multiple drafts of the agreement were exchanged by counsel, and even after the agreement was executed, a supplement soon followed.
In essence, the motion judge rescinded the settlement agreement despite the fact that there was no indication of the various factors enumerated in Brundage that would warrant such action. There was no allegation of fraud or other misdeed except a default based on the failure of defendants to make one of the installment payments. Moreover, the carrier, who had paid its obligated share, found itself again in a litigated matter that it thought had been settled.
While we deem the agreement to be less than artfully drafted, we are satisfied that we can discern the meaning of the agreement to provide that in the event of default, plaintiffs could move to final judgment against Assured. Although much of the discussion centered on the absence of a filed stipulation of dismissal, the agreement is silent as to that issue. Plaintiffs' counsel argues that the parties agreed to hold the stipulation pending receipt of all funds, yet as noted, the agreement is silent as to that issue. Moreover, by its terms, the entirety of the agreement is contained within its four corners.
The circumstances here reveal a settlement that incorporated within its terms a series of installment payments with dates certain. Payments were made and accepted consistent with the terms of the agreement until the default. The only mention of remedy is contained first in Paragraph IV, providing for enforcement (and phrased as "may") and Paragraph XI (phrased as "opportunity"). In both instances, enforcement was not mandated but left to plaintiffs' choice as to when to enforce. In no instance did the agreement identify any other remedy other than the *209 entry of judgment for the outstanding balances. Nothing in the agreement speaks to or suggests that rescission, return of monies and trial was a remedy available to plaintiffs.
Additionally, plaintiffs strongly urge, and the trial judge agreed, that they had little practical interest in obtaining a judgment against the corporate defendant when such judgment might be of limited value. Yet, that is what plaintiffs bargained for. Whether this bargain was prompted by the merits of the case or otherwise is not known by us and is of little moment in our analysis; however, if plaintiffs' focus was on retention of personal liability, that intent is not reflected in the proffered agreement.
In a case involving enforcement of a settlement agreement, we recently restated the principle that we will "not rewrite contracts in order to provide a better bargain than contained in [the parties] writing." Grow Co., supra, 403 N.J.Super. at 464, 959 A.2d 252 (citing Christafano v. N.J. Mfrs. Ins. Co., 361 N.J.Super. 228, 237, 824 A.2d 1126 (App.Div.2003)). The judge's rescission of the settlement agreement does exactly that.
Restoring a matter to the trial list involves more than simply an agreement of the parties. The court is an interested party and any attempt to reinstate a matter requires acquiescence of the court. When the parties seek to include rescission (including the repayment of previously paid funds) and reinstatement of a previously-settled matter to the trial list, such a remedy should not be left to a vague suggestion but must be clearly set forth in the agreement. Such a remedy is extraordinary and must be dealt with as such. On the record before us, we conclude that the parties contemplated the entry of a judgment and the recovery of attorneys fees against Assured as the remedy in the event of default, not the rescission permitted by the judge. By finding that the remedy imposed by the motion judge was not appropriate, we do not suggest or infer that a judge is foreclosed from ordering rescission where the requisite elements warranting rescission are present, see Rutgers Cas. Ins. Co. v. La Croix, 194 N.J. 515, 527, 946 A.2d 1027 (2007), Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 626-27, 432 A.2d 521 (1981). The focus here was limited solely to the interpretation of contractual language with no suggestion of fraud, misrepresentation or other indicia of conduct warranting rescission.
The matter is reversed and remanded. Plaintiffs may move for judgment for the unpaid sums due and owing under the terms of the agreement as well as the attorneys fees and costs set forth in Paragraph XI.
Reversed and remanded for proceedings consistent with this opinion.
NOTES
[1] An amendment to the agreement also provides that as to plaintiff Kaur: "The $50,000 shall be paid by the defendants in any manner agreeable to them, although all defendants agree to be jointly and severally liable for this $50,000 amount." This provision was not the subject of any discussion at the motion.