**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4392-16T1

JET STAR REALTY, LLC,

    Plaintiff-Appellant,

v.

FRESH FOOD DIRECT, LLC and
JUNE POWERS,

    Defendants-Respondents.

_____

        Submitted February 14, 2018 — Decided July 11, 2018

        Before Judges Nugent and Currier.

        On appeal from Superior Court of New Jersey,
        Law Division, Bergen County, Docket No. L-
        1306-16.

        Waldman, Renda & McKinney, PA, attorneys for
        appellant (Thomas A. McKinney, on the brief).

        Meyner & Landis LLP, attorneys for respondents
        (Matthew P. Dolan, on the brief).

PER CURIAM

    Plaintiff, Jet Star Realty, LLC, appeals from an order that

denied its motion to enter judgment on a settlement agreement

arising out of a dispute over rent due under a commercial lease.

The trial court denied Jet Star's motion because Jet Star sought to enforce a clause the trial court deemed an unenforceable penalty. We affirm.

Defendant June Powers is the managing member of defendant Fresh Fruit Direct, LLC, Jet Star's former tenant. After Fresh Food terminated the commercial lease before its term's end, the parties disputed the amount of rent Fresh Food owed Jet Star under the lease terms. Jet Star filed suit against defendants. The parties resolved their dispute, signed a Stipulation of Settlement, and filed a Stipulation of Dismissal.

The Stipulation of Settlement required defendants to pay Jet Star $20,000 in six monthly installments of $3333.33, due the first of each month beginning November 2016. The Stipulation of Settlement included a provision that if any installment payment was not received by the fifth business day of the month it was due, Jet Star's attorneys were required to notify defendants they were in default. If defendants did not cure within ten days after the default notice was sent, Jet Star would have the right to enter a judgment. The provision stated:

> In the event that [defendants] do not cure the default within ten (10) days after the required notice is sent by [Jet Star's attorneys, Jet Star] shall have the right to file a certification, on notice to [defendants' attorneys], setting forth the default . . . the amount paid to date and the

> balance due under this Agreement and shall be entitled to a [j]udgment against [defendants] in the sum of $25,000 less credit for any payments made.

Defendants' final installment payment was due April 1, 2017. In a letter dated April 11, 2017, Jet Star's attorneys wrote defendants' attorneys informing defendants they were in default. Counsel for Jet Star followed up with an email on April 18, 2017, and a second email April 26, 2017. In the latter email, Jet Star's counsel wrote, "[w]ill payment be made or should I start the default proceedings?"

Defendants made the final payment on Friday, May 5, 2017. According to the trial court's opinion, defendants filed the motion to enter judgment on the settlement three days later, Monday, May 8, 2017. According to Jet Star, it prepared a motion for entry of judgment on Thursday, May 4, 2017, and mailed it to defendants the same day. Defendants averred they made the final payment before receiving Jet Star's motion. The trial court denied Jet Star's motion to have judgment entered in the amount of the final payment plus $5000. The court explained:

> [I]t is undisputed that all payments under the [s]ettlement agreement were made and received and accepted by [Jet Star]. In fact, it is undisputed that the last payment made on May 5, 2017 was submitted prior to the filing of the within motion. The final payment satisfied [d]efendant's obligations under the [s]ettlement agreement.

The court further determined that the entire settlement having been paid, the additional $5000 was excessive, contrary to the interests of justice, and an inappropriate penalty. The court concluded that imposing an additional $5000 penalty after the settlement had been paid in full would be inequitable.

On appeal, Jet Star argues it is entitled to enforce the settlement agreement. Defendants contend the trial court correctly refused to enforce what amounted to an unenforceable penalty. We agree.

Indisputably, "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). While contractual provisions for liquidated damages are enforceable, penalty clauses are unenforceable. Wasserman's, Inc. v. Middletown, 137 N.J. 238, 248 (1994).

Liquidated damages are those "a party . . . agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, [are] legally recoverable as agreed damages if the breach occurs." Westmount County Club v.

4

Kameny, 82 N.J. Super. 200, 205 (App. Div. 1964) (citation omitted). In contrast, "[a] penalty is the sum a party agrees to pay in the event of a breach, but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach." Ibid. "[L]iquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving unreasonableness." Metlife Capital Fin. Corp. v. Wash. Ave. Assoc., LP, 159 N.J. 484, 502 (1999) (citing Wassermans, 137 N.J. at 251-52).

The distinction between an enforceable liquidated damage clause and an unenforceable penalty clause is not always clear. "New Jersey courts have viewed enforceability of stipulated damages clauses as depending on whether the set amount 'is a reasonable forecast of just compensation for the harm that is caused by the breach' and whether that harm 'is incapable or very difficult of accurate estimate.'" Wassermans, 137 N.J. at 250 (quoting Westmount Country Club, 82 N.J. Super. at 206). "The reasonableness of a stipulated damages clause can be assessed "at the time the contract is made or when it is breached." Metlife Capital Fin. Corp. v. Wash. Ave. Assoc., LP, 159 N.J. 484, 502 (1999) (citing Wassermans, 137 N.J. at 251-52). The issue of

5

"whether a stipulated damages clause is enforceable is a question of law for the court."  Wassermans, 137 N.J. at 257.

Here, evaluating the $5000 damages clause as of the time of the breach, the trial court concluded the clause was an unenforceable penalty.  We agree.  Defendants made their final $3333.33 payment fifteen days past the default date.  When they made this final payment, defendants had not received Jet Star's motion, and Jet Star's motion had not been filed with the court. Jet Star accepted the payment.  Jet Star does not explain, and we cannot discern, how under these circumstances $5000 constitutes just compensation for a fifteen-day late payment of $3333.33.  In short, the $5000 is unreasonable and hence an unenforceable penalty.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4392-16T1