**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1611-19T3

COMMERCIAL SPACE, LLC,

    Plaintiff-Appellant,

v.

PIRANHA PROPERTIES, LLC
and PAULO MATOS,

    Defendants-Respondents.

_____

Argued November 18, 2020 – Decided January 7, 2021

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0733-18.

Joshua M. Lurie argued the cause for appellant (Lurie Strupinsky, LLP, attorneys; Joshua M. Lurie, on the briefs).

Donald J. Rinaldi argued the cause for respondents (DiBiasi & Rinaldi, LLC, attorneys; Donald J. Rinaldi, on the brief).

PER CURIAM

Plaintiff Commercial Space, LLC filed a complaint alleging defendants Piranha Properties, LLC and Paulo Matos trespassed on plaintiff's property and caused environmental contamination requiring costly remediation. The parties resolved the underlying dispute and entered into a settlement agreement. Plaintiff later moved to enforce the agreement, arguing defendants' alleged failure to make a timely settlement payment required entry of judgment against defendants in the amount of $241,565. The court rejected plaintiff's claim, finding the payment was timely because the payment schedule had been modified or amended by the parties, and that any delay in making the payment did not constitute a material breach of the agreement. Plaintiff appeals from the court's order denying its motion to enforce the settlement agreement. Having reviewed the record in light of the applicable law, we vacate the court's order and remand for further proceedings.

I.

Following the filing and service of plaintiff's January 2018 complaint, defendants did not file a responsive pleading. On August 17, 2018, the court entered a final default judgment against defendants in the amount of $241,565, the amount of compensatory damages plaintiff sought in the action. Two months later, the court granted defendants' motion to vacate the final default

judgment and permitted defendants to file an answer to the complaint. Defendants subsequently filed an answer generally denying the allegations in the complaint and asserting affirmative defenses.

In July 2019, while the action was still pending, plaintiff moved to enforce a settlement agreement it alleged had been reached between the parties. Plaintiff requested the court enter a $241,565 judgment against defendants in accordance with what it claimed were the terms of the settlement agreement.[1] More particularly, plaintiff claimed defendants defaulted on their obligation to timely make a $100,000 payment due under the settlement agreement and, as a result, it was entitled to entry of a $241,565 judgment against defendants. The record presented to the court on plaintiff's enforcement motion consisted of the certifications of plaintiff's counsel and defendants' counsel.

Plaintiff's Counsel's Certification

In support of the motion, plaintiff relied solely on the certification of its counsel, who generally described the events leading to the entry of a written settlement agreement, as well as defendants' alleged breach of the agreement. Attached to counsel's certification is a copy of an agreement that is signed by

---

[1] Plaintiff also sought an award of costs and attorney's fees pursuant to the settlement agreement.

defendants and dated June 27, 2019.[2]  In pertinent part, the agreement requires that defendants pay plaintiff $150,000, with $100,000 due concurrent with the execution of the agreement and the balance to be paid by five successive $10,000 monthly installments commencing on September 1, 2019.

The agreement also includes a provision entitled "Default" that details what occurs in the event a party to the agreement defaults.  The agreement requires service of a notice to the defaulting party and a fifteen-day period to cure the default after the requisite notice is provided.  The agreement further provides that if defendants are in default following the fifteen-day cure period, a judgment in the amount of $241,565, less any prior settlement payment amounts, shall be entered against them.

The Default provision states:

> Should any Settling Party default on any term set forth herein, and after being provided with a period of fifteen (15) days to cure with notice of the default by way of the Notice provision below, then:
>
> a. The Party asserting the default shall be permitted to commence an action in a court of competent jurisdiction to enforce the terms of this Agreement. Such action shall either be by a motion to enforce the terms herein or a separate action for breach of contract;

---

[2]  The record on appeal does not include a copy of the agreement signed and dated on plaintiff's behalf.

A-1611-19T3

b. The Parties agree that, in the event of a default, a stipulated judgment shall be entered against Defendants, jointly and severally, in the amount of Two Hundred Forty One Thousand, Five Hundred Sixty Five Dollars ($241,565[]), minus any payments made to [plaintiff] consistent with this agreement;

. . . .

d. [Plaintiff] shall be entitled to reasonable counsel fees and costs incurred to enforce this Settlement Agreement and Mutual Release provided that [plaintiff] successfully establishes that a breach has occurred. The Settling Parties agree that a cure of the default by the Defendants after any action to enforce this Agreement is taken by the Defendants shall not make moot or diminish in any amount the counsel fees and costs provision herein.

A separate provision, entitled "Notices," states that "[a]ll notices . . . required by or given under [the agreement] shall be given by overnight mail through a service to which any package may be tracked[] and addressed" to a designated address of the attorney for the party to whom the notice of default is provided.

In his certification supporting the motion to enforce the settlement, plaintiff's counsel represented that defendants proposed to settle the matter for $150,000 with payments to be made over time. Plaintiff's counsel sent defendants' counsel a June 11, 2019 email stating plaintiff agreed to settle the matter for $150,000 conditioned on defendants' payment of $100,000 "[c]oncurrent with the execution of a settlement agreement" and five successive

5

monthly installments of $10,000. The email further stated plaintiff's agreement to settle was conditioned on defendants' agreement to entry of a judgment against them in the amount of $225,000, less any payments otherwise made, if defendants "miss[] a payment." The subsequent written agreement provided that in the event of a default by defendants, a $241,565 judgment could be entered against them.

In his certification, plaintiff's counsel also explained that he forwarded a written settlement agreement to defendants' counsel on June 20, 2019. Attached to the certification is a June 25, 2019 email from defendants' counsel stating his clients did "not like the [j]udgment amount in the event of a default," but that he had explained to them "this is pretty much standard language." The email also requested amendments to the settlement agreement, including a requirement for written notice of a default and a fifteen-day period to cure any default. In the email, defendants' counsel stated that he would arrange for his clients to make "the first payment" during the week of June 25, 2019.

It appears plaintiff's counsel interpreted the June 25, 2019 email as confirmation of an agreement to settle the litigation subject to inclusion of defendants' requested revisions to the settlement agreement. In his certification, plaintiff's counsel states that "[u]pon notice from [d]efendants that the terms

were agreed to by [d]efendants, [he] advised [his] client which executed the settlement at that time." Plaintiff's counsel represented that forty-five minutes later, he received an email from defendants' counsel stating defendants "had suddenly backed out of the agreement and [were] only willing to pay an initial $50,000[], an additional $50,000[] on August 1, 2019, and then begin the periodic payments a month thereafter." Plaintiff's counsel also stated that he "inquired from [his] client regarding these changed terms after the agreement was agreed to and execution began," and that "[p]laintiff did not agree to these new terms."

Two days later, on June 27, 2019, plaintiff's counsel advised defendants' counsel that defendants should sign the written settlement agreement and pay $50,000 immediately and put the additional $50,000 "in the mail prior to the cure period."

In an email on the same date, defendants' counsel advised that he had a check for $50,000 and the signed settlement agreement, and that they would be hand-delivered to plaintiff's counsel the next day.[3] The following morning, plaintiff's counsel responded in an email, stating that, as he had discussed with

---

[3] In his email, defendants' counsel referred to the settlement agreement as a "release." The settlement agreement includes a mutual release of all claims of the parties.

defendants' counsel, defendants must pay $100,000 "consistent with the terms of the settlement agreement" and that plaintiff would accept the initial $50,000 payment "with the expectation that the [$50,000] balance is in the mail."

The record does not include a fully executed copy of the written settlement agreement.[4]  The agreement included in the record is signed by defendants only and is dated June 27, 2019.  The settlement agreement defendants signed on June 27, 2019, requires that they pay $100,000 at the time the agreement is executed followed by five subsequent monthly $10,000 payments.

Plaintiff's counsel certified that on June 28, 2019, he received the settlement agreement signed by defendants and a $50,000 payment.  By July 2, 2019, he had not received a second $50,000 payment.  In his supporting certification, plaintiff's counsel stated that, "consistent with the terms of the agreement," on July 2, 2019, he "wrote to [defendants' counsel] regarding the default and demanding that it be cured" and enclosed a stipulation of dismissal. The letter is not attached to counsel's certification, and his certification provides

---

[4]  At oral argument on plaintiff's motion to enforce the settlement agreement, plaintiff's counsel represented that a fully executed copy had been "filed" with the court.  The record on appeal, however, does not include a copy of the agreement executed by plaintiff.

no facts establishing that the letter was served in accordance with the requirements of the settlement agreement's Notices provision.[5]

Plaintiff's counsel "did not hear back from" defendants' counsel in response to the letter and did not receive the signed stipulation of dismissal he expected from defendants' counsel. In his certification, plaintiff's counsel states that on July 18, 2019, sixteen days after he sent his prior correspondence, he again wrote to defendants' counsel "to advise of the ongoing issue." In his email, plaintiff's counsel made no mention of a prior notice of default or request to cure. The email states that plaintiff's counsel had not heard back from defendants' counsel "in response to a date certain to pay the balance of the initial payment" and the email references defendants' counsel's failure to return the signed stipulation of dismissal. The email states plaintiff "wants to accelerate the payments and judgment amount." It also expresses plaintiff's counsel's

---

[5] We interpret plaintiff's counsel's assertion that he wrote to defendants "consistent with the terms of the agreement" as a conclusory declaration and not a statement of fact. As noted, the Notices provision requires service of the notice of default in a prescribed manner, and plaintiff's counsel's certification does not provide any facts establishing his letter was served in accordance with the Notices provision's requirements. Moreover, there is no evidence establishing defendants' counsel received the letter that plaintiff's counsel asserts concerned the default and demand that it be cured, or demonstrating when it was received, if at all.

concern that the "initial $50,000 sent . . . is it" and that he would be "going back to court with a confession of judgment."

Defendants' counsel responded the same day in an email stating defendants "want to keep the settlement together" and that they could deliver the second $50,000 payment the following day and pay the first $10,000 installment by August 15, 2019. Defendants' counsel also suggested that if plaintiff took "an unreasonable position" concerning its receipt of the settlement payments, the parties could ask the court to decide the issue.

Plaintiff's counsel's certification does not indicate when he received the second $50,000 payment from defendants, but the certification is dated July 31, 2019, and plaintiff's counsel acknowledges that, by then, he had received $100,000 from defendants. Plaintiff's counsel requested that the court enter judgment in plaintiff's favor "in the amount of $241,565[] minus $100,000 already paid" in accordance with the Default provision of the settlement agreement.[6]

Defendants' Counsel's Certification

In opposition to plaintiff's motion to enforce the settlement agreement, defendants relied on their counsel's certification. Defendants' counsel stated,

---

[6] Plaintiff also sought an award of attorney's fees and costs.

"There is no question that [his] client[s] agreed to the overall settlement . . . for $150,000[], payable with an initial payment of $100,000[], and then the payment of $10,000[] per month thereafter for . . . five months." Defendants' counsel, however, "did not realize" when the payment terms were first discussed that plaintiff "expected instant payment of the settlement proceeds."[7] Defendants' counsel further explained that his clients had issues with the Default provision's requirement that "even the smallest default [would] end up with the filing of a judgment for the entire amount demanded in the [c]omplaint." Defendants' counsel recalled that he requested that the settlement agreement "provide for a short period in which . . . defendant[s] could cure any default."

Defendants' counsel further asserted his "client[s] did not sign off on the [s]ettlement [a]greement that was drafted by [p]laintiff's counsel" and that "he made the changes regarding the payments and then had [the agreement] hand delivered" to plaintiff's counsel "with the first check of $50,000[]." Defendants' counsel asserted that plaintiff "was free to refuse the changes [he] had made" to the settlement agreement "and return the check," but instead plaintiff accepted

---

[7] Counsel's certification refers to "defendant[s] expect[ing] instant payment of the settlement proceeds." In context, however, it is clear counsel intended to refer to plaintiff's expectations concerning the payment of the settlement proceeds.

the initial $50,000 payment, accepted the second $50,000 delivered "a few weeks later, and then accepted the first monthly payment of $10,000[]." Defendant's counsel averred that if "[p]laintiff did not agree to the slight modification that [he] made" to the settlement agreement, "the checks should have been rejected or returned."

Defendants' counsel represented that as of August 8, 2019, the date of his certification, defendants had paid plaintiff $110,000 toward the $150,000 settlement. He requested that the court either order that defendants should pay the remaining four $10,000 monthly payments or require that all the monies paid be returned and the putative settlement be set aside.

The Court's Decision

The court heard argument on plaintiff's motion to enforce the settlement. In a decision from the bench, the court found the agreement was signed on June 27, 2019. The court further found that although the agreement states $100,000 would be paid at the time of its execution, the payment requirements under the agreement "were not clear" following the June 27 communications between counsel. The court determined the agreement's requirement that $100,000 be paid at the time of the agreement's execution was "modified or waived by the parties, notwithstanding" the payment provision in the agreement. The court

also found that the manner in which defendants paid the initial $100,000 did not constitute a material breach of the parties' agreement.

The court entered an order denying plaintiff's motion. This appeal followed.

## II.

"A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). The construction and interpretation of a settlement agreement is a matter of law and is subject to de novo review on appeal. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009); see also Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) ("When a trial court's decision turns on its construction of a contract, appellate review of that determination is de novo."). We "give 'no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Manahawkin Convalescent, 217 N.J. at 115 (quoting Kieffer v. Best Buy, 205 N.J. 213, 222 (2011)). We apply that standard of review here.

"[T]he settlement of litigation ranks high in our public policy," and we "strain to give effect to the terms of a settlement wherever possible." Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (citations omitted). "Our strong policy of enforcing settlements is based upon 'the notion that the parties to a

dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Ibid. (citation omitted).

The interpretation of a settlement agreement is "governed by basic contract principles." Capparelli v. Lopatin, 459 N.J. Super. 584, 603 (App. Div. 2019). "'[A]bsent a demonstration of "fraud or other compelling circumstances,"' a court should enforce a settlement agreement as it would any other contract." Id. at 603-04 (quoting Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005)). "'[C]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."' A reviewing court must consider contractual language '"in the context of the circumstances" at the time of drafting . . . .'" In re County of Atlantic, 230 N.J. 237, 254 (2017) (citations omitted). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Capparelli, 459 N.J. Super. at 604 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). As with the interpretation of any other contract, a court shall not rewrite a settlement agreement "to provide a better bargain than contained in [the] [parties'] writing." Kaur, 405 N.J. Super. at 477

(first alteration in original) (quoting Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008)).

Plaintiff argues the court erred by failing to enforce the plain language of the written settlement agreement, which required that defendants pay $100,000 at the time of the execution of the agreement. The motion court rejected plaintiff's reliance on the agreement's plain language, however, finding defendants' obligation to pay $100,000 at the time of the execution of the agreement was modified through the communications between, and actions of, the parties' respective counsel.

"[I]n the absence of some vested derivative interest in another, a contract may be modified . . . by . . . the contracting parties." DeAngelis v. Rose, 320 N.J. Super. 263, 280 (App. Div. 1999) (third alteration in original) (quoting County of Morris v. Fauver, 153 N.J. 80, 95 (1998)). "A contract modification is 'a change in one or more respects which introduces new elements into the details of a contract and cancels others but leaves the general purpose and effect undisturbed.'" Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n, 414 N.J. Super. 453, 466 (App. Div. 2010) (quoting Int'l Bus. Lists, Inc. v. Am. Tel. & Tel. Co., 147 F.3d 636, 641 (7th Cir.1998)). Modifications to a written contract are not required to be made in writing. A contract "modification can be proved

by an explicit agreement to modify, or . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." County of Morris, 153 N.J. at 99.

The motion court correctly recognized the certifications of the parties' respective counsel suggest there was a modification of the written settlement agreement's requirement that defendants pay $100,000 at the time of the agreement's execution. Indeed, plaintiff's counsel acknowledges defendants' counsel advised him defendants were only willing to pay an initial $50,000 during the week of June 25, 2019, and an additional $50,000 on August 1, 2019. In addition, plaintiff's counsel subsequently informed defendants' counsel plaintiff would accept an initial payment of $50,000 as long as the remaining $50,000 was "in the mail."

In contrast, in his certification, defendants' counsel asserts he "made . . . changes regarding the payments" under the settlement agreement and "had [the agreement] hand delivered to the office of the [p]laintiff's attorney with the first check of $50,000[]." Defendants' counsel further asserts plaintiff was "free to refuse the changes" he made concerning the payments "and return the check" but did not do so.

In our view, counsels' certifications raise fact issues concerning whether there was a modification of the written agreement's requirement that defendants pay $100,000 upon their execution of the settlement agreement, and, if so, what were the precise terms of the modification. Plaintiff's counsel's certification indicates plaintiff agreed to an extension of the due date at least during the time the second $50,000 was "in the mail," but plaintiff's counsel also acknowledges defendants' counsel requested an extension until August 1, 2019. Defendants' counsel asserts he made changes to the payment schedule for the initial $100,000.

In any event, there are insufficient undisputed facts presented to permit a finding there was a modification of the settlement agreement. Moreover, if there was mutual agreement to modify the due date for the payment of the initial $100,000, the record does not permit a determination as to the modified due date. Resolution of those fact issues are essential to plaintiff's claimed entitlement to a judgment in the amount of $241,565 under the Default provision of the written agreement because any modification of the due date for the payment of the initial $100,000 necessarily defines when any alleged default occurred. Stated differently, if, as a matter of fact, the parties, through their counsel, modified the agreement to extend the time for full payment of the initial

$100,000, then defendants did not default until they failed to make the required payment by the modified extended due date. See generally Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997) (explaining when settlement negotiations made by an attorney on behalf of a client are binding on the client). Plaintiff's entitlement to a judgment in the amount of $241,565 must then be determined based on whether plaintiff provided proper notice of the default and afforded defendants the fifteen-day cure period.

Our opinion should not be interpreted as making any findings of fact concerning the existence of a settlement agreement between the parties, the terms of any purported settlement agreement, whether any purported settlement agreement was modified, or any other facts pertinent to the parties' respective positions. We conclude only that the motion court erred by making findings of fact concerning the purported settlement agreement and its modification based on the conflicting, and at times confusing, certifications presented. The record was inadequate and otherwise presented issues of fact precluding the court from properly making its findings without an evidentiary hearing. See, e.g., Conforti v. Guliadis, 245 N.J. Super. 561, 565 (App. Div. 1991) (holding evidentiary hearings are required when there are "contested issues of material fact on the

basis of conflicting affidavits"), <u>aff'd in part and modified in part on other grounds</u>, 128 N.J. 318 (1992).

We also observe that, even assuming the written settlement agreement provided by plaintiff's counsel fully defined the parties' obligations and was not otherwise modified, the record was inadequate to permit the granting of plaintiff's enforcement motion. Entry of a $241,565 judgment under the Default provision is permitted only following service of a notice of a default and expiration of a fifteen-day cure period. We have no reason to question plaintiff's counsel's representation that on July 2, 2019, he sent a letter to defendants' counsel "regarding the default and demanding it be cured," but his certification does not establish service of the notice in accordance with the requirements of the Notices provision, and there is no evidence defendants' counsel received the letter. Plaintiff bore the burden of establishing its right to relief under the Default provision, but it failed to present competent evidence that defendants' counsel was served with the notice of default and afforded the cure period required by the Default and Notices provisions of the settlement agreement.

Additionally, the date defendants' counsel received the purported notice, assuming the notice complied with the requirements of the Default and Notices provisions, must be established to determine whether defendants' payment of the

19

second $50,000 payment fell within the cure period. The record presented to the motion court did not permit such a determination based on competent evidence, and it thereby precluded any finding plaintiff was entitled to the $241,565 judgment under the Default provision of the settlement agreement.

We also consider the court's determination that the alleged late delivery of the second $50,000 payment did not constitute a material breach of the parties' agreement. We observe that any agreement reached by the parties was for the settlement of a claim, and the parties were free to make the timing of the settlement payments a condition of plaintiff's acceptance of less than it otherwise claimed it was entitled. The parties were similarly permitted to agree that if the payments were not timely made, defendants would pay more. See Columbia Presbyterian Anesthesiology v. Brock, 379 N.J. Super. 11, 15-17 (App. Div. 2005) (reversing a court's denial of a motion to enforce a settlement agreement providing for entry of a stipulated judgment for the total amount of damages claimed by plaintiff, where the defendant failed to make an agreed-upon timely payment against an agreed-upon, and lower, settlement amount). An agreement by the parties permitting entry of a $241,565 judgment following a default, proper service of notice of the default, and expiration of the fifteen-day cure period renders a default material, and it is not the court's role to rewrite

an agreement to provide any party with more favorable settlement terms than those to which it agreed. See Kaur, 405 N.J. Super. at 477.

In sum, we vacate the court's order denying plaintiff's motion to enforce the settlement, and we remand for further proceedings. As noted, we make no findings of fact, and nothing in our opinion shall be construed to limit the arguments the parties may make in support of their respective positions or the court's consideration of whatever issues are pertinent and necessary to resolve plaintiff's claim it is entitled to entry of a $241,565 judgment against defendants under the Default provision of the written settlement agreement.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION