**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2935-22

COUNTY OF WARREN,

    Plaintiff-Appellant,

v.

NICHUA LIACI,

    Defendant-Respondent.

_____

Argued September 10, 2024 – Decided September 27, 2024

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Warren County, Docket No. C-016006-23.

Lisa Barré-Quick argued the cause for appellant (Apruzzese, McDermott, Mastro and Murphy, attorneys; Lisa Barré-Quick, of counsel and on the briefs; Catherine A. Morris, on the briefs).

Eric W. Feinberg argued the cause for respondent (Caruso Smith Picini, PC, attorneys; Thomas M. Rogers, of counsel and on the brief).

PER CURIAM

Plaintiff County of Warren appeals from a trial court order denying its order to show cause (OTSC) to enforce settlement terms orally placed on the record at an administrative hearing. Since we determine the essential terms of a settlement were voluntarily agreed to by the parties are entitled to enforcement, we reverse.

I.

The background facts and procedural history are substantially undisputed. Defendant Nichua Liaci was a corrections officer at the Warren County Correctional Facility (WCCF) employed by the plaintiff. In December 2021, while off-duty, defendant was engaged in an altercation with another corrections officer at a charity event at Phillipsburg Middle School. The other officer filed a complaint with WCCF Internal Affairs (IA) alleging defendant engaged in harassment, threats of violence, unprofessionalism and hostility.

Subsequently, defendant was suspended with pay and in January 2022, she was served with a Preliminary Notice of Disciplinary Action (PNDA) which suspended her without pay, pending the IA investigation. The investigation was completed in April 2022, and the results were communicated to the Warren County Administrator. The findings of the investigation led to defendant being served an amended PNDA in May 2022, seeking defendant's removal.

A-2935-22

In response to the amended PNDA, defendant notified plaintiff she would be appealing the findings and sought an administrative departmental hearing. Additionally, defendant filed a notice of claim and an Equal Employment Opportunity Commission charge[1] against plaintiff.

A departmental disciplinary hearing was held over a three-day period in December 2022. Prior to the start of the last hearing day, the parties engaged in settlement negotiations. The parties reported to the hearing officer that a settlement had been reached.

Thereafter, the parties placed the following terms of their settlement on the record.

Defendant would retire through the Police and Fireman's Retirement System (PFRS) as of the date of a signed agreement. A written agreement reflecting the settlement terms reached and memorialized on the record would be prepared by plaintiff's counsel and sent to defendant's counsel one day after the settlement terms were placed on the record at the hearing. In exchange for her retirement, plaintiff would dismiss all disciplinary charges against defendant. Defendant would sign a release waiving her "right to sue and dismiss any lawsuits" against plaintiff and agreed to a "covenant not to sue [plaintiff]."

---

[1] The charge was dismissed on December 16, 2022.

A-2935-22

Defendant would receive a payout of any unused accrued sick and vacation time consistent with the terms of her labor union contract. The parties agreed to mutual non-disparagement clauses. Plaintiff would provide a neutral letter of reference, attached to the formal settlement agreement and setting forth defendant's dates of employment and positions held. Defendant would waive any claim to back pay. Plaintiff would pay defendant the equivalent of thirty-five days of pay, issued to her in a check, which would not reflect pensionable time and would be subject to applicable tax withholdings.

The parties further agreed "subject to Chapter 78 withholdings," defendant would receive health benefits for the next three years with her portion of costs based upon her salary and when she reaches twenty-five years of service and retires, she will be responsible for her "retiree health contributions." Defendant would be entitled to choose the type of health insurance benefits plan she wished, including the option to choose a family health benefit plan. When defendant reached age sixty-five, she would become Medicare eligible.

Defendant's counsel agreed to the settlement terms when the hearing officer asked if an agreement was reached. Additionally, defendant responded directly to questions concerning the settlement terms placed on the record. She testified the terms placed on the record were the entire agreement, she

4

understood the agreement, she was entering into the agreement voluntarily and she was not under the influence of any drugs or alcohol that would impair her ability to understand the terms of the agreement. The hearing officer then asked defendant if the agreement had been fully explained to her to which she responded affirmatively. In addition, defense counsel represented that the Warren County Administrator was present and agreed to the terms of the settlement.

In accordance with the representations agreed to on the record, the next day plaintiff's counsel sent a document to defendant's counsel entitled "Voluntary Retirement and Settlement Agreement" (Agreement). No dispute exists that some of the terms contained in the Agreement differed from those placed on the record. About six days after receipt, defendant's counsel responded he was "redlining" the agreement. In her response, defendant requested the balance of her hours in her "timebank" and a copy of plaintiff's policy concerning the maximum number of hours which may be paid out.

Thereafter, a teleconference was held between counsel. At the teleconference, defendant's counsel informed plaintiff's counsel defendant elects to exercise her right to "repudiate" the Agreement and either move forward with the hearing or settle under different terms.

5

After some additional communications between counsel, eventually plaintiff objected to the "repudiation" and informed defendant's counsel it would likely file an application to enforce the terms of the settlement placed on the record. After several exchanges of communication between the parties resulting in no progress toward a resolution, plaintiff filed its OTSC to enforce the settlement.

After the trial court heard oral argument, it rejected defendant's position that plaintiff had failed to exhaust administrative remedies and found the court had jurisdiction to hear the matter since it involved enforcement of a "contract." The court also found it had jurisdiction to hear the OTSC since the administrative tribunal had no "special expertise" involving contract matters. The trial court also rejected defendant's argument the factors of Crowe v. DeGioia, 90 N.J. 126 (1982) were applicable.

The court addressed whether the back and forth between the parties served as a "reopening" of negotiations and if the agreement served as a "counteroffer" from plaintiff. The court found both arguments were "relatively frivolous and without merit." The court also found the issue "as the court sees it is not whether it is a counteroffer or demand to amend the settlement agreement which had been reached," but the "issue was whether or not the material terms placed on

the record in and of themselves without being memorialized in a written agreement are enforceable."

The trial court made a finding certain portions of the agreement were not mentioned during the administrative hearing. Most notably, the court focused on paragraphs nine and eleven of the proposed agreement which involved the requirements for the release and waiver of certain claims.

Paragraph nine entitled "Employee's Release" specifically listed numerous federal and state employment statutes subject to the release and waiver, including the Age Discrimination in Employment Act of 1967 (ADEA). This paragraph stated in pertinent part:

> Except for claims relating to the enforcement of the Agreement, Employee hereby releases and forever discharges the Employer . . . from any and all manner of action and actions . . . suits, claims, grievances, debts, sums of money, wages, compensation, bills, claims for attorney's fees . . . controversies, agreements . . . claims and demands of any nature whatsoever known or unknown . . . which Employee ever had or now has against Employer arising out of her employment relationship with the Employer up to the date of execution of this Agreement which were asserted or could have been asserted by the Employee under any state or federal statute[.]

The court found the released actions listed in the agreement at paragraph nine were not specifically set forth in the record at the hearing. The court stated:

A-2935-22

There is an explicit release from any potential claims under the Civil Rights Act, Federal and State, there's Americans with Disability, Family Medical Leave, Fair Labor Standards, Retirement Income Security Act of 1974, ERISA, Equal Pay Act, Rehabilitation Act, Privacy Discrimination Act, Municipal Protection Statutes, New Jersey Civil Rights, New Jersey LAD, New Jersey Family Leave, . . . et cetera. None of which or all of which of course were not set forth on the record.

Finally, although neither party argued or briefed the issue, the trial court sua sponte found paragraph eleven of the agreement entitled "Statutory Review Revocation Period, was the controlling paragraph." Paragraph eleven stated in pertinent part:

Pursuant to the Older Worker's Benefit Protection Act, Employee has twenty-one (21) calendar days from the delivery hereof to consider this Agreement. Employee may accept this Agreement before the expiration of the twenty-one (21) days, in which case she shall waive the remainder of the consideration period. Employee has a period of seven (7) calendar days after delivering the executed Agreement to revoke acceptance of the Agreement. [] This Agreement shall become effective on the eighth (8th) day after the delivery of this executed Agreement by the parties, provided that Employee has not revoked acceptance or rescinded the Agreement.

After reading paragraph eleven into the record, the court found the Older Worker's Benefit Protection Act (OWBPA), 29 U.S.C.A. § 621 to 634, permits an employee twenty-one days from its delivery to "consider" the agreement. The

8

court also found the employee could "accept the agreement before the expiration of the twenty-one-days" and thereafter would have "seven calendar days" from the delivery of the agreement to "revoke or accept the agreement." The court further found the agreement becomes effective on the "eighth day after delivery of [the] executed agreement" unless "the employee has not revoked acceptance of the agreement."

The court found "[i]n [its] opinion, [paragraph eleven] is the most important provision of this agreement. That's because it explains [plaintiff's] position that they're walking away from any material term of the settlement, not contained solely in that two-page transcript of December 20[], 2022."

The trial court found the OWBPA applied to situations where there are claims of "age discrimination in employment" and it gives protections to older individuals regarding "employee benefit plans." The court determined the settlement terms placed on the record applied to defendant's employee benefit plan because it concerned "early retirement and medical benefits" and therefore found the OWBPA was applicable including its requirements concerning the settlement and release of claims.

The court concluded by finding:

> [I]t's clear that the specific language of [paragraph eleven] dealing with statutory review and revocation

period of this voluntary retirement or release agreement, codify the requirements of the [OWBPA]. It's clear that defendant has the right to revoke and if the factual circumstance comes under this argument bargained for rights under the two labor contracts, she's entitled to revoke it. It was clearly done under the time period and therefore, the court finds that the — there was no settlement and will enter an order remanding the disciplinary action back to the hearing officer.

This appeal followed.

## II.

On appeal, plaintiff argues the trial court committed error in denying its OTSC based on its reliance on the terms contained in paragraph eleven of the unexecuted Agreement rather than the terms of the settlement orally set forth on the record at the administrative hearing.

Defendant asserts the court did not err in its reasoning and argues paragraph eleven of the Agreement permitted defendant to "repudiate" the settlement. Also, reiterating her arguments to the trial court, defendant asserts plaintiff should be barred from pursuing its appeal since it failed to exhaust administrative remedies and, in the alternative, the case should be remanded for a plenary hearing to determine whether a valid settlement was reached since factual issues existed surrounding the validity of the settlement.

III.

Initially, we address defendant's argument concerning the failure of plaintiff to exhaust administrative remedies and determine defendant is barred from raising this issue since she failed to file a cross appeal. A party may [only] argue points the trial court either rejected or did not address, so long as those arguments are in support of the trial court's order. See Lippman v. Ethicon, Inc., 432 N.J. Super. 378, 381 n.1 (App. Div. 2013) ("As respondents, defendants can raise alternative arguments in support of the trial court's judgment without filing a cross-appeal."); Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435, 443 (App. Div. 1984) ("[W]ithout having filed a cross-appeal, a respondent can argue any point on the appeal to sustain the trial court's judgment.").

Because the trial court denied defendant's argument concerning the exhaustion of administrative remedies now raised on appeal, this argument is barred from being asserted on appeal since defendant did not file a cross-appeal challenging the trial court's adverse finding. See State v. Eldakroury, 439 N.J. Super. 304, 307 n.2 (App. Div. 2015) ("Where a defendant is seeking to expand the substantive relief granted by the trial court, as opposed to merely arguing an additional legal ground to sustain the trial court's [decision], the defendant must file a cross-appeal.").

11

Turning to defendant's argument claiming the trial court erred by not holding a plenary hearing, this argument holds no merit since defendant did not raise this point in the trial court and agreed at oral argument that no issue of material fact existed which required a hearing in relation to plaintiff's enforcement motion. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973) (discussing the principle that appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest).

Addressing the parties' arguments concerning the applicability of the holding in Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC, 215 N.J. 242 (2013), to the facts of the matter before us, we conclude they lack sufficient merit to warrant discussion for the reasons expressed by the trial court. R. 2:11-3(e)(1)(E). We add only that the settlement terms relevant to the matter on appeal were not the result of a mediation as was the case in Willingboro and its holding is therefore not applicable.

We also conclude, as did the trial court, plaintiff's proposed draft settlement agreement which contained provisions differing from those terms placed on the record was not a counteroffer. We find no reasons to disagree

with the trial court's framing of the issue in its oral decision when it found the question was whether "the material terms placed on the record without being memorialized in a written agreement are enforceable." To answer this question, we now address the parties' arguments concerning whether a settlement was reached through the oral terms placed on the record and, if so, whether the settlement should be enforced. We answer both questions in the affirmative.

We begin with a review of the well-established legal principles governing settlements. There is a strong public policy in favor of enforcing settlement agreements, which is "based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div.), certif. denied, 137 N.J. 165 (1994)).

Settlements will usually be enforced "'absent compelling circumstances.'" Ibid. (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "Consequently, courts 'strain to give effect to the terms of a settlement wherever possible.'" Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523 (App. Div. 1985)).

A settlement agreement is governed by principles of contract law.

Brundage, 195 N.J. at 601 (citing Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)).  "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts."  Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)).  A court may not set aside a settlement agreement absent fraud or other misdeeds, unless the parties clearly expressed in the agreement that rescission was an available remedy for a breach.  Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 476-78 (App. Div. 2009).

"Interpretation and construction of a contract is a matter of law for the court subject to de novo review."  Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998).  "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes."  Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

"Where the parties agree upon the essential terms of a settlement so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges."  Lahue v. Pio Costa, 263 N.J. Super.

575, 596 (App. Div.), certif. denied, 134 N.J. 477 (1993); see also Pascarella, 190 N.J. Super. at 124 (noting the fact a settlement was made orally "is of no consequence").

Essential terms are those that go to the "heart of the alleged agreement." Satellite Ent Ctr., Inc. v. Keaton, 347 N.J. Super. 268, 277, 789 (App. Div. 2002). Alternatively, if the parties do not agree to one or more essential terms, their contract is ordinarily unenforceable. Ibid. Where parties have agreed to the [essential] terms of a settlement, "second thoughts are entitled to absolutely no weight as against our policy in favor of settlement." Dep't of Pub. Advocate, 206 N.J. Super at 530.

Additionally, since the trial court relied upon the waiver provisions contained in the OWBPA to support its order now under appeal, we believe a summary of the genesis and background concerning these provisions are appropriate.

In 1990, Congress amended ADEA, 29 U.S.C. §§ 621-34, by passing the OWBPA. The waiver provision contained in the OWBPA clearly indicates its limited applicability to claims arising only under the ADEA: "An individual may not waive any right or claim under this Act unless the waiver is knowing and voluntary" and meets the listed criteria. 29 U.S.C. § 626(f)(1); see also

Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998) (stating "[t]he OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law").

Similarly, 29 C.F.R. §§ 1625.22 and 1625.23 specifically apply only to the waiver of claims under the ADEA. The statutory provisions of OWBPA apply only to ADEA claims and not to state law claims. Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 295 (3d Cir. 2003).

Based on our de novo review of the record, we conclude the representations of the parties placed on the administrative hearing record were the operative settlement terms, not the proposed terms of the unexecuted Voluntary Retirement and Settlement Agreement. Therefore, we determine the trial court's reliance on the terms in the unsigned proposed agreement which set forth the OWBPA waiver and revocation requirements as its basis to deny plaintiff's OTSC requesting enforcement was error.

We conclude the stipulations set forth on the record at the administrative hearing included all the essential terms of the settlement between the parties and was a binding and enforceable contract. The record clearly illustrates defendant agreed to waive all claims and any future accrued claims against plaintiff in consideration of the dismissal of the disciplinary charges against her, a

16

continuation of her health insurance benefits and for other monetary considerations including future pension benefits. Our careful review of the record also demonstrates defendant clearly testified at the hearing she understood all the terms of the settlement, she was entering into the settlement terms freely and voluntarily, she was not under the influence of any substance which would affect her ability to understand the settlement terms and the terms placed on the record resolved all the issues between the parties.

Although we find no fault with defendant rejecting the terms in the Agreement which were different or in addition to those placed on the record at the hearing, defendant's relief was simply to object to those terms and require plaintiff to provide an agreement which reflects only those terms agreed to on the record. If plaintiff was unwilling or unable to provide a compliant agreement, defendant had a right to make application to the appropriate tribunal requesting enforcement. In this instance, defendant never requested plaintiff to provide a compliant settlement agreement containing only those terms placed on the record at the hearing.

In addition, we conclude compliance with the OWBPA is required only for a waiver of ADEA claims. If a "release [does] not comply with the OWBPA's stringent safeguards, it is unenforceable . . . insofar as it purports to

17

waive or release [an] ADEA claim. <u>Oubre</u>, 522 U.S. at 428. "As a statutory matter, the [non-conforming] release cannot bar [an] ADEA suit, irrespective of the validity of the contract as to other claims. <u>Ibid</u>.

We also conclude, even if the settlement terms placed on the record may not have complied with the waiver provisions of the OWBPA, the non-compliance did not go to the essence of the settlement. The parties agreed on all terms which went to the "heart of the agreement," including the dismissal of the disciplinary action against defendant in consideration for her early retirement, and her waiver of claims against plaintiff and the financial benefits she would receive.

A waiver and release of all claims against plaintiff was specifically agreed to by defendant and reflects the clear intent of the parties. We conclude the parties' failure to specifically address the waiver of ADEA claims on the record was not a compelling circumstance which would justify the denial of plaintiff's OTSC. At the heart of the settlement was a general waiver of all other claims by defendant which implicitly included a multitude of other pending and potential state and federal employment claims.

Based on the Court's reasoning in <u>Oubre</u>, we determine it is neither unfair nor inequitable under the factual circumstances before us to require the

18

defendant to honor the terms she agreed to on the record including her waiver of all claims against plaintiff. Oubre concluded the OWBPA sets forth the requirements for the waiver and release of ADEA claims only and does not affect the waiver of other federal or state law claims not subject to its purview. The terms concerning the waiver of ADEA claims set forth in paragraph eleven of the unexecuted Agreement was not directly addressed at the hearing and therefore this waiver was clearly not an essential term of the settlement between the parties.

We do not make any determination as to the viability of any current or future ADEA claims which could be initiated by defendant. We determine only the trial court's reliance on the OWBPA provisions in the proposed unexecuted written agreement to support its denial of plaintiff's OTSC was erroneous and was an insufficient basis to invalidate the clear intent of the parties to resolve their matter under the settlement terms set forth on the record at the hearing.

We remand to the trial court to enter an order requiring the parties to exchange and execute a written agreement which contains the settlement terms agreed to by the parties on the record on December 20, 2022. We otherwise affirm. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2935-22